**Jerald J. WOMACK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 43A03–0001–CR–27.

Court of Appeals of Indiana.

Nov. 16, 2000.

Transfer Denied Jan. 22, 2001.

322

Michael W. Reed, Reed & Earhart, Warsaw, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Defendant Jerald Womack ("Womack") appeals his convictions of Possession of Marijuana, a class D felony,[1] and Criminal Mischief, a class A misdemeanor,[2] following a jury trial. We affirm in part and reverse in part.

1. *See* IND.CODE § 35–48–4–11.

### Issues

Womack raises two issues upon appeal, which we restate as follows:

I. Whether Womack's convictions were supported by sufficient evidence, and

II. Whether the trial court's instruction and verdict form regarding enhancement of Womack's marijuana conviction from a class A misdemeanor to a class D felony violated Article I, section 19 of the Indiana Constitution.

### Facts and Procedural History

At approximately 10:20 p.m. on January 11, 1999, Womack went to the Suburban Acres trailer park to determine if his ex-girlfriend, Karissa Kilgore ("Kilgore"), was entertaining a male friend in her mobile home. Womack arrived at the trailer's front door and demanded entry, claiming to know that "someone" was there. Kilgore told Womack to leave. Womack, however, was not to be denied, and he began battering the door with his feet. He kicked a hole in the door and broke the door's frame. Despite the violence of the attack, Kilgore and another woman, who was staying in the trailer with her infant child, managed to keep Womack out by bracing themselves against the door. Womack eventually left, and Kilgore's house guest went to another trailer to call the police while Kilgore watched the baby.

Officer Donald McCune ("Officer McCune") of the Kosciusko County Sheriff's Department was dispatched to Suburban Acres to investigate Womack's assault on the trailer. As he pulled up to the trailer park in his police cruiser, Officer McCune saw Womack, whom he recognized from previous interactions. Officer McCune exited his vehicle and called out to Womack. Womack, who was walking, turned around and began running away from Officer McCune along a path. Offi-

2. *See* IND.CODE § 35–43–1–2.

cer McCune called out to Womack to stop, but he continued to flee, and the officer pursued on foot. As Womack was running away, Officer McCune saw Womack reach into his pockets with both hands. Womack withdrew one hand, and made a motion as if he was throwing an object. When Officer McCune reached the area where Womack made the throwing motion, the officer dropped his car keys to mark the spot for a later search, and continued running after Womack. Officer McCune eventually apprehended Womack at the front door of Kilgore's trailer, where Womack was once again pleading to be let in.

After he caught Womack, Officer McCune called for a K9 unit to investigate the area in which he dropped his keys to determine whether Womack had discarded any contraband when he made his throwing motion. Officer Craig Bale ("Officer Bale") arrived shortly thereafter with his dog, Fritz, and Fritz began canvassing the area. Fritz soon honed in on a plastic bag containing a leafy green substance lying on the snow three or four feet from the path on which Womack was running. Although it had been lightly snowing, the bag was covered by droplets of water and was free of snow. The Indiana State Police later determined that the bag contained 6.5 grams of marijuana.

On January 14, 1999, Womack was charged with Possession of Marijuana while having a prior marijuana conviction, and with Criminal Mischief. The matter proceeded to jury trial on November 15, 1999. The trial court bifurcated the matter for an initial determination of whether Womack committed Possession of Marijuana and Criminal Mischief, and, if so, for a subsequent determination of whether Womack had a prior marijuana conviction at the time of the offense to support the enhancement of his Possession conviction to a class D felony pursuant to Indiana Code Section 35–48–4–11. The jury found Womack guilty of Possession and Criminal Mischief, and the court initiated the enhancement phase of the trial. The state presented evidence that Womack had been convicted of dealing marijuana in California in 1988, and again in Morgan County, Indiana in 1994. The jury then convicted Womack of Possession of Marijuana while having a prior marijuana conviction, and the court entered judgment on the jury's verdicts on November 16, 1999. Womack appeals his convictions.

**Discussion and Decision**

Womack claims that his convictions were not supported by sufficient evidence, and that the court erroneously instructed the jury with regard to the enhancement of his marijuana conviction.

### I. Sufficiency of the Evidence

#### A. Standard of Review

When we address a claim that a conviction is not supported by sufficient evidence establishing the defendant's guilt, we may not reweigh the evidence or question the credibility of witnesses. *Doty v. State*, 730 N.E.2d 175, 180 (Ind.Ct.App. 2000). That is the function of the fact finder. *Id.* We must affirm a conviction if the finder of fact heard evidence of probative value from which it could have inferred the defendant's guilt beyond a reasonable doubt. *Graham v. State*, 713 N.E.2d 309, 311 (Ind.Ct.App.1999), *trans. denied.* When making this determination, we consider only the evidence, and all reasonable inferences to be drawn from that evidence, favorable to the verdict. *Id.*

#### B. Analysis

##### 1. Possession of Marijuana

Possession of Marijuana consists of the knowing or intentional possession of marijuana. IND.CODE § 35–48–4–11(1). A person possesses marijuana when he has the intent to, and is capable of, exercising dominion and control over the substance. *Wilburn v. State*, 442 N.E.2d 1098, 1101 (Ind.1982). Further, possession may be "knowing" if the defendant is aware of a high probability of the possession. *See* IND.CODE § 35–41–2–2(b).

■ Womack argues that since the police did not find the marijuana on his person, it would be pure speculation and conjecture to infer that the marijuana found by the police was his. We disagree. The state was not required to show that Womack possessed the bag of marijuana at the time of Womack's apprehension, or at the time the officers discovered the bag. *See Wilburn* 442 N.E.2d at 1101 (noting that defendants do not have to be "caught red-handed" to be convicted for possessory offenses); *Lycan v. State,* 671 N.E.2d 447, 457 (Ind.Ct.App.1996) (holding that the State need not prove the defendant possessed marijuana at time it was recovered). Rather, the state was simply required to prove that Womack was knowingly or intentionally capable of maintaining dominion and control over the marijuana on January 11, 1999, the date identified in Womack's charging information. *See Lycan,* 671 N.E.2d at 457.

In this case, Womack fled from the police without provocation, and during his flight, appeared to throw something taken from his pockets. Police found a bag of marijuana in the vicinity of Womack's throw. The jury was entitled to infer that a person knows what is in his pockets, and is capable of maintaining dominion and control over items therein, and the jury could have inferred from the evidence that Womack withdrew the bag of marijuana from his pockets while fleeing from the police, and discarded it to avoid its detection. Womack contends that the evidence also supports the inference that the marijuana belonged to someone else. The jury, however, heard evidence that the events took place around 10:20 at night, that the bag was recovered by the police shortly after Womack made his throwing motion during the chase, and that although it was snowing, the bag was covered by droplets of water and not snow flakes. This evidence was sufficient to support the inference that the bag of marijuana had only been on the ground a short time, and that the bag had been dropped by Womack and

no one else. The evidence was sufficient to support Womack's conviction of Possession of Marijuana.

### 2. Criminal Mischief

■ A person commits Criminal Mischief as a class A misdemeanor when he recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent, resulting in $250.00 to $2,500.00 in damage. IND.CODE § 35–43–1–2(a)(1)(A). Womack argues that the state failed to present sufficient evidence that the trailer belonged to anyone but him, or that he caused more than $250.00 worth of damage to the trailer's door. Again, we disagree.

■ At trial, Womack claimed that he, and not Kilgore, owned the trailer. Womack based his claim of ownership on the trailer's Certificate of Title, which indicated that Kilgore had sold the trailer to Womack for $10.00 on December 14, 1998. Possession of a title certificate is not in itself conclusive proof of ownership or legal title of a vehicle. *Pekin Ins. Co. v. Charlie Rowe Chevrolet, Inc.,* 556 N.E.2d 1367, 1370 (Ind.Ct.App.1990). Rather, the three primary indicia of ownership of personal property such as the trailer here are title, possession, and control. *See Meridian Mortgage Co. v. State,* 182 Ind.App. 328, 395 N.E.2d 433, 439 (1979).

Kilgore admitted that she signed the certificate of title to Womack, but claimed she did so because Womack threatened to divulge information about Kilgore that would have adversely affected a custody dispute between Kilgore and her parents over Kilgore's daughter. Kilgore testified that she never actually sold the trailer to Womack, and that he never paid her for the trailer and owned no part of it. According to Kilgore, Womack had stayed at the trailer while the two were on better terms, but was not living there on the date of the incident, had no key, and had no right to enter the trailer without Kilgore's permission. Kilgore further testified that she and Womack reconciled shortly after

Womack's arrest, and the two decided to trade in the trailer on a new mobile home. Kilgore testified, without objection, that Womack expressly disavowed any interest in the first trailer when the two purchased the second trailer. Although Womack claimed he owned the trailer, the jury was presented with sufficient evidence to conclude that this was not the case.

Womack also contends that the state failed to prove that Womack caused more than $250.00 in damage to the trailer.[3] Kilgore testified that she and her friend who helped fend off Womack's attack repaired the door, and that the damage probably exceeded $250 .00. Officer McCune testified that in addition to his law enforcement career, he worked in the home construction trade, and stated that the damage Womack caused would cost at least $250.00 to repair. Womack did not present any contrary evidence, and does not claim that these witnesses were unqualified to render an opinion as to the value of the loss he caused. He simply asks us to reweigh the evidence presented to the jury, which we will not do. The evidence was sufficient to show that Womack caused at least $250.00 worth of damage to the trailer.

## II. Jury Instruction and Verdict Form

### A. Standard of Review

 Instruction of the jury is left to the sound judgment of the trial court, and will not be disturbed absent an abuse of discretion. *Reed v. State,* 720 N.E.2d 431, 435 (Ind.Ct.App.1999), *trans. denied.* Jury instructions will be considered as a whole and not individually, and a court does not necessarily abuse its discretion by giving an erroneous instruction. *Id.* To find that the court abused its discretion by giving an erroneous instruction, we must find that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Id.*

**3.** Criminal Mischief is a class B misdemeanor if it results in damage worth less than $250.00, but is a class A misdemeanor if the

### B. Analysis

#### 1. Possession of Marijuana Instruction

 Indiana Code section 35–48–4–11 provides that Possession of Marijuana is generally a class A misdemeanor, but can be a class D felony if the defendant committed the offense while having "a prior conviction of an offense involving marijuana, hash oil or hashish." During the second phase of Womack's trial, the trial court gave the following instruction over Womack's objection:

> The State has charged the Defendant with a Class D felony for violation of this section. Possession of marijuana, hash oil or hashish is a Class D felony if the Defendant was convicted of the crime charged and if he has a prior conviction of an offense involving marijuana, hash oil or hashish.

> To convict the Defendant of a Class D felony, the State must have proved the following additional element:

> The Defendant

> 1. has been previously convicted of an offense involving marijuana, hash oil or hashish.

> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of possession of marijuana, a Class A misdemeanor.

> If the State did prove each of these elements beyond a reasonable doubt, *you should find the Defendant guilty of possession of marijuana, a Class D felony.*

> If the State did prove each of these elements beyond a reasonable doubt, you may, but are not required to find the Defendant guilty of possession of marijuana, a Class D felony.

(R. 107, emphasis added.) Womack reasons that since this instruction advised the

loss is between $250.00 and $2,500.00. IND. CODE. Sec. 35–43–1–2(a)(1)(A)(i).

jury that it "should" find Womack guilty of class D felony Possession if the jury found that he had a prior marijuana conviction, it ran afoul of Article I, section 19 of the Indiana Constitution.

Article I, section 19 of the Indiana Constitution provides that "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts." This provision's application to the instruction of juries in criminal trials has been a source of some confusion.[4] Nevertheless, it has long been the law that a trial court may not instruct a jury that it "shall" enter a particular verdict upon the finding of certain facts, because binding, specific and mandatory instructions invade the constitutional province of the jury under Article I, section 19. *Pritchard v. State*, 248 Ind. 566, 230 N.E.2d 416, 421 (1967). Instructions that a jury "should" reach a decision, however, have not been strictly prohibited. In *Loftis v. State*, 256 Ind. 417, 269 N.E.2d 746, 747 (1971), our supreme court explained that a trial court may properly instruct a jury that it "should" reach a certain verdict, so long as the court either specifically delineates in the instruction the material allegations to be proved, or instructs the jury that they are the judges of the law and the facts. *Id.* See also *Mitchem v. State*, 503 N.E.2d 889, 891 (Ind.1987) (following *Loftis*).

The Indiana Supreme Court recently confirmed and clarified the rule regarding instructions that a jury "should" reach a particular verdict in two cases involving habitual offender determinations. *See Parker v. State*, 698 N.E.2d 737 (Ind.1998) and *Seay v. State*, 698 N.E.2d 732 (Ind. 1998). In *Seay*, the court held that a jury in a habitual offender proceeding has the discretion as arbiter of the law and facts to determine whether a defendant is a habitual offender "irrespective of the uncontroverted proof of prior felonies." 698

N.E.2d at 737. Thus, according to the supreme court's reasoning, although the legislature has expressly provided that "[a] person is a habitual offender if the jury . . . finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) unrelated prior felony convictions," I.C. § 35–50–2–8(d), a jury may nevertheless, in the exercise of its constitutionally-granted nullification power, refuse to find a defendant to be a habitual offender despite finding that the defendant has accumulated the requisite three unrelated felonies. *See Seay*, 698 N.E.2d at 736–737 and n. 9. The supreme court accordingly held in both *Parker* and *Seay* that it is erroneous to instruct a jury that it "should" determine a defendant to be a habitual offender upon a finding of the requisite number of prior felonies, because to do so would lead a jury to believe that it did not have the discretion under Article I, section 19 to find that the defendant was not a habitual offender despite the requisite prior unrelated felonies. *Parker*, 698 N.E.2d at 741–743; *Seay*, 698 N.E.2d at 734–737. See also *Johnson v. State*, 717 N.E.2d 887, 891 (Ind.Ct.App. 1999) (applying *Parker* and *Seay* and holding instruction that jury "should" find defendant a habitual offender improper). The supreme court in *Parker* confirmed, however, that a timely instruction advising the jury of its discretion to determine the law and the facts would be sufficient to cure any error resulting from the "should" language. 698 N.E.2d at 742–743. *See also, Johnson*, 717 N.E.2d at 891.

Womack contends that even though this is not a habitual offender case, the rule from *Seay* and *Parker* applies here because the enhancement of his charge from a class A misdemeanor to a class D felony on the basis of his prior marijuana conviction was analogous to a habitual offender

4. "The line which has been drawn in this state beyond which a trial court in its instructions dare not go without being reversed because of a supposed infringement upon the jury's right to determine the law in criminal cases has been precarious, shifting and uncertain many times in the past. This historical fact is of little credit to this court." *Beavers v. State*, 236 Ind. 549, 141 N.E.2d 118, 125 (1957).

determination. The State appears to agree without discussion that this case should be governed by the standard announced in *Seay* and *Parker*. In *Seay*, the supreme court explained that Article I, section 19 applies to habitual offender determinations primarily because a defendant's status as a habitual offender is a question to be determined by a jury.[5] *Seay*, 698 N.E.2d at 736, n. 8. Womack, of course, was entitled to a jury trial on the issue of his guilt of the Possession charge, including whether he was guilty of class A misdemeanor or class D felony Possession. *See* IND. CONST. ART. I, § 13 (providing right to jury trial in all criminal prosecutions). The jury accordingly had the discretion to determine the law and facts regarding these matters, and Article I, section 19 applied to the second phase of Womack's trial. In particular, under the rationale in *Seay*, Article I, section 19 vested the jury here with the power to find that although Womack had a prior marijuana conviction, he was only guilty of Class A misdemeanor Possession.

During the second phase of the trial, the jury was instructed that it "should" find Womack guilty of class D felony possession if it concluded that Womack had a prior marijuana conviction. Such an instruction, standing alone, would violate the dictates of Article I, section 19 as explicated in *Parker* and *Seay*, because it would have suggested that the jury did not have the discretion to find that Womack was guilty only of class A misdemeanor Possession, despite his prior marijuana conviction. The final paragraph of the court's instruction, however, specifically stated that the jury could decline to convict Womack of class D felony Possession even if the jury found that he had a prior marijuana conviction. (R. 107). Since the jury was instructed as to this option, we cannot say that the court's instruction invaded the province of the jury and improperly led the jury to believe that it did not have the

discretion to decide the law and the facts afforded under Article I, section 19. Moreover, even if the instruction did not contain this option, it would not require reversal. Here, the trial court specifically advised the jury in its final instructions that "under the Constitution you are the judges of the law and the facts; . . ." (R. 108.) As explained in *Parker*, the trial court's timely final instruction here was sufficient to cure any error resulting from the term "should" in the Possession instruction.

### 2. Verdict Form

■ Womack also takes issue with the verdict form submitted to the jury over his objection after the second phase. The verdict form read as follows:

### COURT'S INSTRUCTION TO THE JURY

There are two (2) possible verdicts, stated below, which you should consider. When you have concurred in your verdict, your foreperson should write on the line which precedes the statement that is correct under your verdicts, the word "yes", with only one such answer provided upon the verdict.

### VERDICT C

We, the Jury, find the Defendant, Jerald J. Womack:

_____ **GUILTY** of the crime of Possession of Marijuana, a **CLASS A MISDEMEANOR,** having **NOT BEEN CONVICTED** of a previous offense involving marijuana, hash oil or hashish.

_____ **GUILTY** of the crime of Possession of Marijuana, a **CLASS D FELONY,** having **BEEN CONVICTED** of a previous offense involving marijuana, hash oil or hashish,

---

**5.** The court also noted that the severity of the sentence enhancement for habitual offenders was a factor in its determination that Article

I, section 19 applies. *Seay*, 698 N.E.2d at 736, n. 8.

as charged in **COUNT I** of the information.

(R. 114, emphasis in original.) Womack contends that the verdict form violated Article I, section 19 of the Indiana Constitution because the form did not provide a third option advising the jury that it could find Womack guilty of class A misdemeanor Possession, and not class D felony Possession, even though Womack had prior marijuana convictions.

As noted above, under the rationale of *Seay,* the jury in Womack's case had the discretion under Article I, section 19 to find that Womack had a prior marijuana conviction, and yet find him guilty of Possession only as a class A misdemeanor. The verdict form used here specifically stated that there were only "two (2) possible verdicts": Womack was either guilty of class A misdemeanor Possession, "having not been convicted" of a prior marijuana offense, or he was guilty of class D felony Possession, "having been convicted" of a previous marijuana offense. (R. 114.) The verdict form therefore placed an absolute limitation on the jury's Article I, section 19 discretion, effectively precluding a conclusion that Womack was guilty of class A misdemeanor Possession despite his prior marijuana convictions. In *Seay,* our supreme court specifically proscribed precisely this kind of a verdict form in habitual offender proceedings, stating

> [w]e . . . overrule or disapprove of . . . cases to the extent that they permitted special verdict forms in habitual offender proceedings which did not allow the jury to find that the defendant was not a habitual offender even though there was a finding that the State had proven beyond a reasonable doubt that defendant had accumulated two prior unrelated felony convictions.

698 N.E.2d at 735, n. 7. The verdict form used in this case was accordingly erroneous.

 The State argues that, as with the Possession instruction, the court's timely final instruction advising the jury of its responsibility to determine the law and facts cured any error in the verdict form. We cannot agree. While the Possession instruction merely advised the jury that it "should" convict Womack of class D felony Possession if it found that he had a prior marijuana conviction, the verdict form effectively mandated a conviction of class D felony Possession upon the finding of a prior marijuana conviction. This distinction is crucial. As discussed in the previous section, our courts have long held that while an instruction that a jury "should" reach a particular verdict may suggest to the jury that its discretion under Article I, section 19 is limited, a timely instruction advising the jury of its authority to determine the law and the facts will offset any misunderstanding created by the instruction. *See Parker,* 698 N.E.2d at 742–743; *Mitchem,* 503 N.E.2d at 891; *Loftis,* 269 N.E.2d at 747. Our courts, however, have never sanctioned binding, specific and mandatory instructions, because they invade the constitutional province of the jury under Article I, section 19. *See Pritchard,* 230 N.E.2d at 421. Implicit in the distinction is the notion that binding and mandatory instructions and verdict forms, by their very nature, cannot be cured by supplemental reminders of the jury's proper responsibility to decide the law and the facts. The verdict form here gave the jury no discretion to do anything but convict Womack of class D felony Possession if the jury found that Womack had a prior marijuana conviction. This improper limitation upon the jury's discretion under Article I, section 19 could not have been cured by reminding the jury that it had the power to decide the law and the facts. We therefore reverse Womack's conviction of class D felony Possession and remand for a new trial to determine whether Womack is guilty of Possession as a class A misdemeanor or a class D felony.

Our conclusion that the verdict form was erroneous should not be taken to mean that we agree with Womack that the trial court was obligated to include a third op-

tion specifically advising the jury that it had the power to ignore the legislature's pronouncement regarding Possession of Marijuana by convicting him of only class A misdemeanor Possession despite Womack's prior marijuana conviction.[6] In this case, we believe that, since the jury instructions adequately explained the difference between class A misdemeanor Possession and class D felony Possession, and advised the jury of its responsibility to decide the law and facts, the verdict form would have been acceptable if it simply gave the jury the option of convicting Womack of Possession as a class A Misdemeanor or as a class D felony, without specific reference to whether Womack had a prior marijuana conviction. That way, the jury would retain the option of finding Womack guilty of class A misdemeanor possession despite his prior marijuana conviction, without being specifically instructed of its power to reject standing law.

Reversed and remanded.

RILEY, J., and BARNES, J., concur.

---

**6.** Such a verdict form would appear to conflict with the express dictates of our supreme court. For example, in *Beavers*, the supreme court stated that "the jury has no more right than a court has to nullify a legally enacted constitutional statute. Juries are not above the constitution or the law, and should not be told that they are." 141 N.E.2d at 124. As the supreme court more recently stated, the jury's power under Article I, section 19 "does not include the right to create law or to reject law." *Holmes v. State,* 671 N.E.2d 841, 857 (Ind.1997). Although the holdings in *Seay* and *Parker* appear to conflict with these pronouncements by sanctioning jury nullification to a greater degree than previously, we do not believe our supreme court meant to imply that Article I, section 19 requires that juries be advised of this power to the specific extent advocated by Womack.