**Shawn BRENT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 34A04–1105–CR–268.**

Court of Appeals of Indiana.

Nov. 17, 2011.

Derrick W. Steele, Deputy Public Defender, Kokomo, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary R. Rom, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

*Case Summary and Issues*

Following a bench trial, Shawn Brent appeals his convictions of possession of marijuana, a Class A misdemeanor, and visiting a common nuisance, a Class B misdemeanor. He raises two issues for our review: whether sufficient evidence was presented to sustain his conviction for possession of marijuana, and whether sufficient evidence was presented to sustain his conviction for visiting a common nuisance. Concluding that insufficient evidence was presented to sustain either, we reverse both convictions.

*Facts and Procedural History*

At about 10:45 p.m. on October 6, 2010, Sergeant Lushin and Sergeant Miller of the Kokomo Police Department were driving their marked police vehicle through the intersection of West Markland Avenue and South Buckeye Street, in Kokomo, Indiana. At the same time, an off-duty officer observed what he believed to be an

illegal drug transaction in that area, so he contacted Officers Lushin and Miller and told them what he saw. Officers Lushin and Miller turned their vehicle around and quickly pulled up to a vehicle parked in the middle of the road, where a person they knew was leaning in the driver's side window.

Officer Miller told the driver of the suspect vehicle to stay parked, but the driver began to slowly drive north on South Buckeye Street. Officer Lushin activated the police emergency lights on his vehicle and pursued the suspect vehicle at a low rate of speed. Officer Lushin saw the driver throw out her window what "appeared to be a partially smoked cigar, possible [sic] a blunt." Transcript at 6. After about seventy yards, the vehicle stopped just inches from a parked vehicle, and Officer Lushin "felt like they were trying to discard something." *Id.* at 4. Officer Lushin clarified that the suspect vehicle stopped so close to the parked vehicle that it was "difficult to even see" what, if anything, occurred. *Id.* at 14. The suspect vehicle continued moving again, and soon stopped a second and final time.

Officer Lushin exited the police vehicle and approached the suspect vehicle from the driver's side. As he approached, he smelled "fresh" marijuana coming from inside the suspect vehicle, "as if they were just smoking recently." *Id.* at 9. Officer Miller approached from the passenger's side. The officers arrested the driver for resisting law enforcement. For officer safety, officers also removed and handcuffed Brent, the front seat and only passenger.

Subsequently, Officer Lushin returned to the area where Brent's driver stopped just inches from the parked vehicle. He recovered a plastic baggie containing what he suspected to be and what later tested positive for marijuana, and then arrested Brent for possession of marijuana. At trial, Officer Lushin explained: "I didn't actually witness him discard [the baggie of marijuana].... I just felt like since they stopped and they were close to a vehicle and, for [the baggie of marijuana] to have come out it would have had to have come out the passengers side window." *Id.* at 5–6. Officers did not recover what Officer Lushin believed to have been a marijuana cigarette thrown from the driver's side window.

The State charged Brent with possession of marijuana as a Class A misdemeanor and visiting a common nuisance as a Class B misdemeanor. Following a bench trial, the trial court found Brent guilty as charged, entered a judgment of conviction on both counts, and sentenced Brent to concurrent sentences that total one year in prison with two days executed and the rest suspended to probation. Brent now appeals his convictions.

*Discussion and Decision*

I. Standard of Review

Our standard of reviewing a sufficiency claim is well-settled: we do not assess witness credibility or weigh the evidence, and "we consider only the evidence that is favorable to the judgment along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction." *Staten v. State*, 844 N.E.2d 186, 187 (Ind.Ct.App.2006), *trans. denied.* "We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt." *Id.*

II. Possession of Marijuana

The trial court convicted Brent of "knowingly or intentionally possess[ing]

(pure or adulterated) marijuana," in violation of Indiana Code section 35–48–4–11.

> This court has long recognized that a conviction for possession of contraband may be founded upon actual or constructive possession. Constructive possession is established by showing that the defendant has the intent and capability to maintain dominion and control over the contraband. In cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he or she knew of the presence of contraband and was capable of controlling it. However, when possession of the premises is non-exclusive, the inference is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. Among the recognized "additional circumstances" are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant.

*Holmes v. State,* 785 N.E.2d 658, 660–61 (Ind.Ct.App.2003) (citations omitted).

The State argues Brent actually possessed the marijuana, and in the alternative, that it presented evidence of Brent's constructive possession of marijuana. But officers did not find the marijuana on Brent's person or see him hold or discard the marijuana from the vehicle. "Actual possession occurs when a person has direct physical control over the items." *Bradshaw v. State,* 818 N.E.2d 59, 62 (Ind. Ct.App.2004). Therefore, Brent's conviction for possession cannot be sustained under a theory of actual possession.

We next consider whether Brent had constructive possession. Brent did not have exclusive possession of the car or the area where the marijuana was eventually found, so we proceed by evaluating the degree to which additional circumstances support a finding of his constructive possession. *See Holmes,* 785 N.E.2d at 660–61. No evidence was presented of incriminating statements by Brent, of a drug manufacturing setting, or that marijuana was found in close proximity to any items owned by Brent.

While Brent's driver apparently attempted to flee by driving away, this was beyond Brent's control as a passenger, and the record does not suggest Brent attempted to flee or made furtive gestures when his driver finally stopped. Given that these recognized additional circumstances are not the only circumstances that could lead to a finding of constructive possession of contraband, we are inclined to agree with the trial court that the suspect vehicles momentary stop so close to a parked vehicle is somewhat suspicious.

Nevertheless, we conclude that this suspicious act should be attributed to the driver, who was in sole control of whether the car would stop or go and primarily in control of how close the car would get to another. Brent could have grabbed the steering wheel and turned the car to the left or right, but there is no indication in the evidence that he did so. A defendant's attempt to flee and furtive gestures are recognized additional circumstances by which a fact-finder may find constructive possession precisely because they suggest that a defendant had the intent and capability to maintain dominion and control over contraband. Here, any suspicion resulting from the suspect car stopping so close to another must be attributed to the driver. That stop alone does not suggest that Brent, as the passenger, had the in-

tent or capability to maintain dominion and control over contraband that was inside the vehicle, outside the vehicle, or was being thrown from the vehicle. The fact that a vehicle is moving does not often discourage people from throwing contraband out the window, even with officers in pursuit.

Moreover, there is no evidence that the marijuana was thrown out of Brent's passengers side window. No officer saw anything being thrown out of that window or even an arm or hand in a throwing motion. The State relies on three portions of the record in support of its contention that marijuana left the passengers side window: 1) Officer Lushin's deduction that he "just felt like since they stopped and they were close to a vehicle," that "for [the baggie of marijuana] to have come out it would have had to have come out the passengers side window," tr. at 5–6, 2) Officer Lushin's testimony that he "felt like they were trying to discard something," *id.* at 4, and 3) Officer Lushin's eventual discovery of marijuana near where the suspect vehicle stopped momentarily.

Unlike the trial court, we do not believe this constitutes sufficient evidence of probative value to support a conviction. In making this conclusion, we are not reconsidering Officer Lushin's credibility, because we make such conclusion even assuming as true that Officer Lushin did, in fact, personally deduce in his minds eye that marijuana left the passengers side window, that he did "fe[e]l[ ]" that the suspects were trying to discard something, *id.*, and that he discovered the marijuana where he says he did. But between Offi-

cer Lushin's thoughts and the eventual discovery of contraband, a gap in the evidence presented precludes a conviction based on suspicious acts of Brent's driver. We are not reweighing evidence—the State failed to present sufficient evidence with any probative value as to Brent's constructive possession.

We next consider the close proximity of where Brent's driver momentarily stopped the suspect vehicle to the spot where Officer Lushin discovered the baggie of marijuana on the ground next to a parked car. Officer Lushin testified the marijuana was found in the same spot that the suspect car stopped. The trial court concluded that for anyone to believe that this was a coincidence, would be equivalent to believing in the existence of a "dope fairy." [1] *Id.* at 22. We agree that the likelihood of a coincidence is low, and have searched for case law that explains when a coincidence is so unlikely that it leads to a reasonable inference that may support a conviction. "Coincidence" case law generally either looks inward to other factual circumstances to emphasize the unlikelihood of a coincidence and that something more intentional must have occurred, or highlights the lack of additional evidence and concludes that without more, the evidence presented does not lead to any inferences.

Based on the evidence presented, we are inclined to follow the latter approach in this case. An officers gut feeling and deduction based solely on the same do not amount to evidence that Brent possessed marijuana. The fact that Brent's driver momentarily stopped the suspect vehicle

---

1. The trial court explained:

I think what really tilts the scale beyond a reasonable doubt is the fact in part that Mr. Brent was then stopped where the marijuana was found.... [T]o paraphrase a[ ] ... prominent defense attorney in Howard County, I think there's only two ways that

... the marijuana could have gotten where it was, either Mr. Brent dropped it or the dope fairy dropped it. And like little green men from Mars, I don't believe in the dope fairy, either.

Tr. at 22.

so that Brent, as the passenger, was sitting (inside the car) in the same spot where Officer Lushin later found the marijuana outside the car, would not lead a fact-finder to reasonably infer Brent's constructive possession of the marijuana.

The circumstances of this case make it unnecessary for us to determine if the marijuana was in plain view. Generally, a fact-finder may reasonably infer that if contraband is in plain view then a defendant in its presence had the intent and capability to maintain dominion and control over the contraband. Here, however, where the marijuana was found at a location where Brent's driver stopped momentarily before driving away, the degree to which the marijuana was in plain view next to a parked car has no bearing on Brent's intent and capability to maintain dominion and control over it.

We also consider whether Officer Lushin smelling fresh marijuana has any bearing on Brent's possession of the same. Recently our court reiterated that the odor of burnt marijuana establishes probable cause to search a vehicle, and concluded further that under certain circumstances the odor of marijuana may constitute probable cause to support an arrest and search incident to arrest. *Edmond v. State*, 951 N.E.2d 585, 591 (Ind.Ct.App.2011). Probable cause, arrest, and even a search incident to arrest are not at issue here. We conclude that Officer Lushin's smelling marijuana is irrelevant to Brent's possession. Brent was arrested, presumably searched incident to this arrest, and did not possess marijuana on his person. Officer Lushin testified that he observed what appeared to be a marijuana cigarette being thrown from the drivers side window. This could explain the odor, and yet does not implicate Brent with possession. In *Edmond*, we stated:

Because the odor of burnt marijuana might linger in a vehicle for a period of time, that odor does not necessarily indicate illegal activity by a current occupant; however, we note that [the officer] specifically smelled marijuana on [the defendant]'s breath in addition to the odor coming from his vehicle. Furthermore, [the defendant] was alone in the vehicle.

*Id.*

In contrast with *Edmond*, no evidence was presented that Brent's breath or person smelled of marijuana, and Brent was not alone in the vehicle. Insufficient evidence was presented that Brent actually or constructively possessed marijuana, and therefore we reverse his conviction of the same.

### III.   Visiting a Common Nuisance

In response to Brent's appeal of his conviction for visiting a common nuisance, the State concedes and explains the following:

[T]o support a conviction for visiting a common nuisance the State was required to prove that ... the vehicle Defendant was in had been used more than once as a common nuisance.... [H]owever, *the State acknowledges that it did not present any evidence about the vehicle being used more than once as a common nuisance.*

Brief of Appellee at 8 (citation omitted; emphasis added).

We appreciate the State's candor. Pursuant to the State's appellate concession, we reverse Brent's conviction for visiting a common nuisance.

### Conclusion

Insufficient evidence was presented as to Brent's possession of marijuana, and therefore we reverse his conviction of the same. The State concedes it did not present sufficient evidence to sustain his con-

viction of visiting a common nuisance, and we also reverse that conviction.

Reversed.

BARNES, J., concurs.

BRADFORD, J., concurs in part and dissents in part with opinion.

BRADFORD, Judge, concurring in part and dissenting in part.

While I agree that Brent's conviction for visiting a common nuisance should be vacated, I cannot agree that the State failed to produce sufficient evidence to establish that he possessed the marijuana found on the roadside. Consequently, I respectfully dissent on that issue.

I do not believe that it is necessary to address the question of whether Brent constructively possessed the marijuana, as I agree with the State that there is sufficient evidence to establish that he *actually* possessed it, even though it was not found in his possession and no witness saw it in his possession. It is well-settled that "conviction for possessory offenses does not depend on the accused being 'caught red-handed' in the act by the police." *Wilburn v. State*, 442 N.E.2d 1098, 1101 (Ind.1982); *see also Lycan v. State*, 671 N.E.2d 447, 457 (Ind.Ct.App.1996) ("In order to prove that Lycan possessed the marijuana, it was not necessary to demonstrate that he was in possession *at the time the marijuana was recovered.*") (emphasis in original). The facts that Brent was not found in possession of the marijuana and no police officer saw it in his hand do not prevent a finding of actual possession. If they did, a fact-finder would not be allowed to find, for example, that a person illegally possessed a gun bearing his fingerprints, so long as it was not discovered in his possession and nobody could testify to having seen him holding it.

Turning to the facts of this case, Officers Lushin and Miller observed a parked vehicle in the middle of the road with Tellys Davis leaning in the drivers side window. At around the same time, the officers received a report of a possible illegal drug transaction in the area, apparently based on the same interaction witnessed by an off-duty police officer from another vantage point. When Officers Lushin and Miller approached, Davis began to walk away. When Officer Miller yelled at the vehicle, in which Brent was a front-seat passenger, to stop, Anderson began to drive away at low speed. During the pursuit, Officer Lushin witnessed Anderson discard what appeared to be a partially smoked cigar, or "blunt." Tr. p. 6.

After traveling approximately seventy yards, the vehicle stopped just inches from another vehicle briefly before continuing and finally stopping altogether. Officer Lushin believed, based on his training, that the passenger may have been dropping something from the vehicle during the brief stop. When Officer Lushin approached the driver's side of the vehicle, he detected the odor of "freshly burnt" marijuana. Tr. p. 9. When Officer Lushin returned to where Anderson had briefly stopped the vehicle, he found a plastic baggie containing 6.54 grams of marijuana in precisely the spot where it would have been had Brent dropped it out the passenger-side window.

I believe that the trial court was entitled to find that Brent dropped the marijuana out of the window of Anderson's vehicle, especially when there are no plausible alternative explanations for the marijuana's presence where it was found. I do not find it particularly significant that Officer Lushin did not see Brent drop the marijuana from the window, as it is also reasonable to infer that Anderson deliberately stopped where it was hoped that such an

action would not be observed. Of course, it is *possible* that the marijuana was already on the street *and* that Anderson had some other reason for briefly stopping where she did, but the State is not required to eliminate all other possibilities, just present evidence allowing a reasonable inference of guilt, which it did here. *See, e.g., Armstrong v. State,* 429 N.E.2d 647, 653 (Ind.1982) ("[W]here the evidence is circumstantial, it is not necessary for this Court to find every reasonable hypothesis of innocence is overcome. It is only necessary that an inference reasonably tending to support the trial court's finding of the defendant's guilt can be drawn from the evidence.").

The facts of this case are similar to those in *Womack v. State,* 738 N.E.2d 320 (Ind.Ct.App.2000), *trans. denied,* in which we rejected the defendant's sufficiency challenge to his conviction for marijuana possession. *Id.* at 324. In *Womack,* the State produced evidence that Womack, when approached by police investigating a domestic disturbance, fled on foot and, while running, reached into his pockets and made a motion as if throwing something. *Id.* at 322–23. When police soon thereafter searched the area where Womack had made the throwing motion, a baggie containing marijuana was found, which, although it had been lightly snowing, was covered by droplets of water and was free of snow. *Id.* at 323.

*Womack,* as does Brent, argued that it would be pure speculation and conjecture to infer that the marijuana was his. *Id.* at 324. We nevertheless concluded that, despite the fact that the marijuana was not found in Womack's possession, the evidence was sufficient to support his conviction for possessing it. *Id.* Here, as in *Womack,* we have evidence of suspicious activity consistent with an attempt to discard contraband, soon followed by the dis-

covery of marijuana in the precise spot where the suspicious activity took place. On this claim, I would reach the same result as we did in *Womack.*