**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN HOSKINS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1307-CR-566 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable Peggy Hart, Commissioner
Cause No. 49G20-1210-FA-71684

**February 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Kevin Hoskins appeals his convictions for Class B felony dealing in cocaine and Class C felony possession of cocaine. He argues that the evidence is insufficient to support his dealing conviction because there is no evidence of his intent to deliver and that the evidence is insufficient to support his possession conviction because he did not actually or constructively possess the cocaine. Finding the evidence sufficient for both convictions, we affirm.

**Facts and Procedural History**

On the afternoon of October 16, 2012, Indianapolis Metropolitan Police Department Officer John Walters and some other officers were patrolling North Dearborn Street on the eastside of Indianapolis. This area was designated a "hot zone" because of the presence of drugs and violent crime. Tr. p. 56. Officer Walters saw Melvin Germany, whom Officer Walters knew did not have a valid driver's license based on his previous interactions with him, driving a car. So Officer Walters decided to pull him over. When Officer Walters pulled up behind Germany's car, Germany and his sole passenger—Hoskins—quickly exited the car and walked away from it. Officer Walters activated his patrol car's public-address system and ordered the men to return to the car. Germany hesitated but then walked to Officer Walters' car and put his hands on the hood. Hoskins, however, refused to comply with Officer Walters' order and, with his hands in his "hoodie" pocket, "walked with a purpose" toward some parked cars, positioning himself on the grass plot between the sidewalk and a parked car. *Id.* at 33. Officer Walters saw Hoskins' arms and shoulders moving as if he was manipulating an object in his hoodie pocket. Officer Daniel Brezik

saw Hoskins behind a parked car "reaching down toward[] his waistband and bending down behind the car." *Id.* at 83. Walters asked K-9 Officer Mark Rand to deploy his dog in order to persuade Hoskins to return to the car. When Officer Rand removed his dog from the patrol car, Hoskins walked to Officer Walters' car.

At this point, Officer Brezik performed an outer-garment pat down of Germany and Hoskins and sat them down on the curb by Germany's car while Officer Walters conducted a warrant search and checked Germany's license status. The search returned no active warrants for either man but confirmed that Germany did not have a valid driver's license. Officer Walters arrested Germany for driving with a suspended license. Officer Walters noticed that both men had a strong odor of burnt marijuana coming from them. Officer Phillip Robinett approached Germany's car and reported that a strong odor of burnt marijuana was coming from inside the car. Officer Robinett started searching the car and found a half-smoked cigar filled with marijuana on the front dash within easy reach of both the driver and the passenger. Because both men smelled like marijuana and the marijuana cigar was within easy reach of both men, Officer Walters arrested Germany and Hoskins for possession of marijuana and handcuffed them. Germany and Hoskins were then searched more thoroughly incident to their arrest. During this search, Officer Brezik found a set of keys on Hoskins' belt loop with two small metal cylinders attached to the keychain. Inside one of the cylinders Officer Brezik found fifteen small baggies of crack cocaine. Each baggie was knotted and contained one rock of crack cocaine. Officer Brezik also found $106 on Hoskins. At this point, the officers could not decide whether the total amount of crack cocaine was over the three-gram threshold, so they discussed using a

3

digital scale from one of their patrol cars to weigh it. Hoskins overheard their conversation and interjected, "naw, it's not over three grams, it's more like two." *Id.* at 39.

In the meantime, Hoskins' sister arrived on the scene, and Hoskins yelled at her to get his "bread," which according to Officer Walters meant money or drugs. *Id.* at 40. Hoskins was frustrated that his sister did not understand what he wanted her to do so he kept yelling for her to get his "bread." *Id.* Finally, Hoskins, who said that he did not care if Officer Walters was standing next to him, yelled "get my dope." *Id.* Officer Walters understood this to mean that Hoskins wanted his sister to recover additional drugs from the scene. So, Officer Walters retraced Hoskins' steps from Germany's car to the parked car where Hoskins was standing. Officer Walters then found, lying between the curb and the rear wheel of the parked car, a plastic bag containing two smaller plastic bags—one containing crack cocaine and the other containing marijuana. Officer Walters believed that Hoskins had dropped the bag when he was standing in that location earlier, as evidenced by his arm and shoulder movements.

It was later determined that the crack cocaine in the fifteen baggies collectively weighed 1.6153 grams, the crack cocaine in the plastic bag weighed 5.3124 grams, and the total amount of marijuana recovered weighed over three grams.

The State charged Hoskins with Count I: Class A felony dealing in cocaine, Count II: Class C felony possession of cocaine, and Count III: Class A misdemeanor possession of marijuana. Hoskins waived his right to a jury trial, and a bench trial was held.

At trial, Detective Joshua Harpe, a narcotics detective for over seven years, testified. Detective Harpe had been involved in over 1000 cocaine-distribution cases. According to

4

Detective Harpe, the fifteen baggies containing a rock of crack cocaine and knotted closed is consistent with dealing. He further testified that crack cocaine is generally sold in .10- to .20-gram quantities and that it is not common for users to carry individually packaged baggies of crack cocaine. According to Detective Harpe, the baggies would sell for between $10 and $20 apiece. As for the plastic bag containing 5.3124 grams of crack cocaine, Detective Harpe testified that it was worth $300 to $400 and that it was also consistent with dealing. Detective Harpe surmised that Hoskins did not have a chance to break up the five grams into smaller chunks or that he was going to sell the five grams as-is. *Id.* at 95-96. Hoskins testified in his own defense and admitted to possessing the crack cocaine found in the cylinder on his keychain but denied that the drugs found by the parked car were his. *Id.* at 124-25, 134. Hoskins said that he purchased the fifteen baggies earlier that day and planned to smoke it. *Id.* at 128. According to Hoskins, it would only take him thirty to forty-five minutes to consume the gram and a half. *Id.*

The trial court found that Hoskins had the intent to deliver the fifteen baggies of cocaine found on his person and therefore found him guilty of Count I: dealing in cocaine; however, the court entered the conviction as a Class B felony as a lesser-included offense of the A felony (because the amount was less than three grams). *Id.* at 164. The court found that Hoskins possessed the cocaine the officers discovered by the parked car but that there was not enough evidence to prove that he intended to deliver it. *Id.* Accordingly, the court found Hoskins guilty of Count II: Class C felony possession of cocaine. Finally, the court found Hoskins guilty of Count III: Class A misdemeanor possession of marijuana. The trial court sentenced Hoskins to ten years for Count I, four years for Count II, and one

year for Count III. The court ordered the sentences to be served concurrently, for an aggregate sentence of ten years.

Hoskins now appeals his convictions for Class B felony dealing in cocaine and Class C felony possession of cocaine.

## Discussion and Decision

Hoskins contends that the evidence is insufficient to sustain his convictions for Class B felony dealing in cocaine and Class C felony possession of cocaine. He does not challenge his marijuana conviction.[1] When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We look solely to the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

### I. Count II: Class C felony Possession of Cocaine

Hoskins contends that the evidence is insufficient to support his conviction for Class C felony possession of cocaine for the 5.3124 grams of cocaine found in the plastic bag by the parked car in the street. Hoskins argues that the evidence is insufficient to prove that he actually or constructively possessed this cocaine.

---

[1] Hoskins "concedes that the evidence is sufficient to show that he possessed the marijuana cigar found in the car so as to support the conviction for Possession of Marijuana as a Class A misdemeanor." Appellant's Br. p. 5; *id.* at 8 n.2.

In order to convict Hoskins of Class C felony possession of cocaine, the State had to prove that he knowingly possessed three or more grams of cocaine. Ind. Code § 35-48-4-6(b)(1)(A); Appellant's App. p. 26. A person actually possesses contraband when he has direct physical control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). This, however, does not require the defendant "being 'caught red-handed' in the act by police." *Wilburn v. State*, 442 N.E.2d 1098, 1101 (Ind. 1982). When the State cannot show actual possession, a conviction for possessing contraband may rest instead on proof of constructive possession. *Gray*, 957 N.E.2d at 174. A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item and (2) the intent to maintain dominion and control over it. *Id.*

We find that Hoskins had actual possession of the 5.3124 grams of cocaine found in the plastic bag by the parked car in the street. Even though Hoskins did not have the cocaine on him when it was discovered by the officers, there is "no requirement that [a defendant's] actual possession of contraband must be shown to have existed at precisely the same time as the law enforcement agency's discovery of the contraband." *Wilburn*, 442 N.E.2d at 1101; *see also Womack v. State*, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000) ("The [S]tate was not required to show that Womack possessed the bag of marijuana at the time of Womack's apprehension, or at the time the officers discovered the bag."), *trans. denied*; *Lycan v. State*, 671 N.E.2d 447, 457 (Ind. Ct. App. 1996) ("In order to prove that Lycan possessed the marijuana, it was not necessary to demonstrate that he was in possession *at the time the marijuana was recovered.*"); *but see Brent v. State*, 957 N.E.2d 648, 650 (Ind. Ct. App. 2011) ("But officers did not find the marijuana on Brent's person

7

or see him hold or discard the marijuana from the vehicle. . . . Therefore, Brent's conviction for possession cannot be sustained under a theory of actual possession."), *trans. denied*.

Here, the trier of fact could have reasonably inferred that when Hoskins quickly exited Germany's car and walked away from it "with a purpose" toward the parked cars in defiance of Officer Walters' order, he did so to get rid of the cocaine. As Hoskins walked away, Officer Walters observed that his hands were in his hoodie pocket. In addition, Officer Walters saw Hoskins' arms and shoulders moving as if he was manipulating an object in his hoodie pocket. Officer Daniel Brezik saw Hoskins behind a parked car "reaching down toward[] his waistband and bending down behind the car." Tr. p. 83. Moreover, when Hoskins' sister arrived on the scene, Hoskins told her to get his "bread." According to Officer Walters, "bread" means drugs or money. Hoskins became frustrated when his sister did not understand what he wanted her to do, so he kept yelling for her to get his "bread." Finally, Hoskins, who said that he did not care if Officer Walters was standing next to him, yelled "get my dope." Officer Walters understood this to mean that Hoskins wanted his sister to recover additional drugs from the scene. Officer Walters then retraced Hoskins' steps from Germany's car to the parked car where Hoskins was standing. This is when Officer Walters found the 5.3124 grams of cocaine in the plastic bag by the parked car in the street.

This evidence is sufficient to prove that Hoskins was in actual possession of the cocaine when he walked from Germany's car to the parked car and that, when he was able to partially hide himself from the officers, he removed the cocaine from his hoodie pocket and dropped it to the ground. That is, Hoskins tried to get rid of the cocaine so that the

officers would not find it on him. Hoskins had direct physical control of the cocaine and, therefore, had actual possession of it. Accordingly, we affirm Hoskins' conviction for Count II: Class C felony possession of cocaine.

## II. Count I: Class B felony Dealing in Cocaine

Hoskins concedes that he possessed the crack cocaine in the fifteen baggies. He argues, however, that the evidence is insufficient to prove that he intended to deliver that cocaine. The trial court found that the evidence was sufficient to prove that Hoskins intended to deliver the 1.6153 grams of cocaine in the fifteen baggies but that the evidence was insufficient to prove that he intended to deliver the 5.3124 grams of cocaine found in the plastic bag by the parked car in the street.

Class B felony dealing in cocaine occurs when a person knowingly or intentionally possesses cocaine with the intent to deliver. Ind. Code § 35-48-4-1(a)(2)(C). Circumstantial evidence of intent to deliver, such as possession of a large quantity of drugs, large amounts of currency, scales, plastic bags, and other paraphernalia as well as evidence of other drug transactions, can support a conviction. *McGuire v. State*, 613 N.E.2d 861, 864 (Ind. Ct. App. 1993), *reh'g denied*, *trans. denied*. The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally. *Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003), *reh'g denied*, *trans. denied*.

The lack of a large quantity of drugs, however, does not mean that the intent to deliver cannot be established. Even a small quantity of drugs can be sufficient where there is other evidence of intent to deliver, such as the packaging of the drugs. Here, the evidence

9

shows that Hoskins possessed fifteen baggies of crack cocaine weighing 1.6153 grams total. Each baggie was knotted closed and contained one rock of crack cocaine weighing approximately 0.1 grams and worth approximately $10-20. Detective Harpe testified that this packaging was consistent with dealing and that it is uncommon for a user to carry fifteen individual bags of crack cocaine. As he explained at trial, "Strictly based on weight, that's a little more than would be common for us to find a user carrying, particularly when it's bagged up like that in ten to twenty dollar hits." Tr. p. 111. Notably, when Hoskins was arrested, no drug paraphernalia was found, and $106 was found on his person.

Furthermore, this case is distinguishable from *Isom v. State*, 589 N.E.2d 245 (Ind. Ct. App. 1992), *trans. denied*, which Hoskins cites. In *Isom*, a search of the defendant's car revealed 0.88 grams of cocaine in ten plastic baggies. However, the search also revealed a glass pipe used to smoke cocaine, which was described as "like it's been used a lot." *Id.* at 248. Accordingly, this Court found that the evidence was insufficient to support the inference that the defendant possessed the cocaine with the intent to deliver rather than for his personal use. *Id.* Here, however, no drug paraphernalia was found. And although the trial court found that Hoskins did not intend to deliver the 5.3124 grams of cocaine found in the plastic bag by the parked car in the street, this cocaine cannot be ignored. We therefore find that the evidence is sufficient to prove that Hoskins possessed the 1.6153 grams of cocaine individually packaged into fifteen baggies with the intent to deliver. *See Dandridge v. State*, 810 N.E.2d 746, 750 (Ind. Ct. App. 2004) (finding intent to deliver where defendant possessed eight individual packages of cocaine totaling 10.07 grams and $351.38); *Davis*, 791 N.E.2d at 270 (finding intent to deliver where defendant possessed

5.6225 grams of cocaine packaged into forty-five bindles). Hoskins' arguments that he was a heavy cocaine user and that Detective Harpe conceded that cocaine users could consume up to seven grams in a twenty-four-hour period are merely invitations for us to reweigh the evidence, which we decline. We therefore affirm Hoskins' conviction for Count I: Class B felony dealing in cocaine.

However, because the Abstract of Judgment reflects that Count I was entered as a Class A felony instead of a Class B felony, *see* Appellant's App. p. 15, 17, we remand this case to the trial court to enter an amended Abstract of Judgment.

Affirmed and remanded.

RILEY, J., and MAY, J., concur.