## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 14 2018, 10:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lonnie Garner,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 14, 2018

Court of Appeals Case No.
49A04-1711-CR-2543

Appeal from the Marion Superior Court.
The Honorable Elizabeth Christ, Judge.
Trial Court Cause No.
49G24-1509-F6-34661

**Darden, Senior Judge**

# Statement of the Case

[1] Lonnie Garner appeals his conviction by jury of criminal mischief, a Class B misdemeanor.[1] We affirm.

# Issue

[2] Garner raises one issue, which we restate as: whether there is sufficient evidence to sustain his conviction.

# Facts and Procedural History

[3] On the night of September 27, 2015, Officer Michael Deskins of the Indianapolis Metropolitan Police Department (IMPCL) was sitting in his marked patrol car in a parking lot, writing a report. He saw a van drive through a red light while speeding. Deskins followed the van and activated his red and blue emergency lights.

[4] The driver of the van, who was later identified as Garner, stopped the van, but he did not put the transmission in park or turn off the engine. From his car, Deskins activated a spotlight and saw Garner's face as Garner looked into a rearview mirror. There was another person in the van as well.

[5] Officer Deskins thought that Garner might be preparing to flee and radioed other officers to place them on alert. Next, Deskins got out of his car, but as he

---

[1] Ind. Code § 35-43-1-2(a) (2014).

approached the van, Garner slowly drove away. Deskins returned to his car and gave chase as Garner accelerated. Deskins also activated his siren and requested assistance from other officers.

[6]     Garner made several sudden turns in an attempt to throw off pursuit. Eventually, Officer Deskins' supervisor ordered Deskins to stop chasing Garner because Garner was driving toward an area where many pedestrians might be present. Deskins turned off his emergency lights and siren but continued to follow Garner as he drove through an alley. After several seconds Deskins saw a large flash, followed by the sound of a loud crash. The top of a utility pole was on fire, and a power line had fallen to the ground.

[7]     As Officer Deskins arrived at the scene, he saw that "an IPL light pole" had fallen to the ground, pulling down power lines with it. Tr. Vol. II, p. 44. In addition, a service line that had connected the pole to a nearby house had been pulled away from the house, tearing off a portion of the house's exterior wall. The van had collided with a parked vehicle, a white SUV, after hitting the pole. The van was empty. Residents of nearby houses came outside, but Deskins warned them to stay back because the downed power lines were still live.

[8]     Next, one of Deskins' fellow officers notified him by radio that the officers had detained two suspects. He walked to the officers' location and saw Garner in handcuffs. Later, an "IPL utility truck" arrived at the alley and deactivated the downed power lines. *Id.* at 46.

[9] The State charged Garner with resisting law enforcement as a Level 6 felony, two counts of criminal mischief (one for the damaged utility pole and power lines, another for the damaged house), both as Class A misdemeanors, and one count of leaving the scene of an accident as a Class B misdemeanor. The case was tried to a jury.

[10] After the State rested its case, Garner moved for a directed verdict. The trial court reduced the criminal mischief counts to Class B misdemeanors. In addition, the trial court dismissed the charge of leaving the scene of an accident. The jury determined Garner was guilty of resisting law enforcement and the two counts of criminal mischief. The trial court imposed a sentence, and Garner now appeals his conviction of Count II, criminal mischief, for damaging the utility pole and power lines.

## Discussion and Decision

[11] Garner challenges the sufficiency of the evidence to support one of his convictions of criminal mischief. When an appellate court reviews the sufficiency of the evidence needed to support a criminal conviction, it neither reweighs evidence nor judges the credibility of witnesses. *Tin Thang v. State*, 10 N.E.3d 1256, 1258 (Ind. 2014). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Thus, appellate courts consider only the probative evidence, and reasonable inferences drawn from the evidence, that support the judgment. *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007). We will uphold

a conviction if there is substantial evidence of probative value from which a fact-finder could have found the defendant guilty beyond a reasonable doubt. *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002). A conviction may be sustained based on circumstantial evidence alone. *Lindhorst v. State*, 90 N.E.3d 695, 701 (Ind. Ct. App. 2017).

[12] To obtain a conviction for criminal mischief as a Class B misdemeanor as charged, the State was required to prove beyond a reasonable doubt that: (1) Garner (2) recklessly, knowingly, or intentionally (3) damaged or defaced power lines and a utility pole belonging to Indianapolis Power and Light (IPL) (4) without the consent of IPL. Ind. Code § 35-43-1-2.

[13] Garner does not dispute striking the utility pole, thereby damaging it and the attached power lines. He instead claims the State failed to present direct evidence to prove the pole and lines belonged to IPL. Garner did not raise the issue of ownership of the utility pole during trial or in his closing argument to the trial court and jury. Further, there is no evidence in the record that Garner specifically moved the trial court, pursuant to Trial Rule 50, for judgment on the evidence or directed verdict regarding the State's alleged lack of proof of ownership of the pole. To the contrary, during closing arguments he described the utility pole and power lines as "IPL property." Tr. Vol. II, p. 136.

[14] The three primary indicia of ownership of personal property are title, possession, and control. *Womack v. State*, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000), *trans. denied*. Officer Deskins, without objection, testified at trial and

identified the utility pole as belonging to IPL. Garner now argues on appeal that the State failed to establish a basis for the officer to know who owned the pole. We disagree. Deskins had been an IMPD officer for several years and had ample opportunity to learn who owned utility poles and power lines in his patrol area. In addition, it is undisputed that Deskins was at the scene of the incident and observed an IPL truck arrive at the alley to turn off the power to the downed lines. The jury, consisting of citizens from Marion County, could reasonably infer IPL's ownership of the pole and the power lines from IPL's attempt to mitigate the harm caused by the downed power lines. The State provided sufficient circumstantial evidence of IPL's ownership of the utility pole and power lines, and Garner's claim must fail.

## Conclusion

[15] For the reasons stated above, we affirm the judgment of the trial court.

[16] Affirmed.

Mathias, J., and Brown, J., concur.