

FILED

Nov 29 2018, 5:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Ian McLean
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pierre A. Smith, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 29, 2018 <br><br> Court of Appeals Case No. 18A-CR-478 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Alicia A. Gooden, Judge <br><br> Trial Court Cause No. 49G21-1706-F4-20545 |

**Mathias, Judge.**

[1] Pierre Smith ("Smith") was convicted in Marion Superior Court of Level 4 felony unlawful possession of a firearm by a serious violent felon. Smith appeals and argues that the State failed to prove that he constructively possessed the firearm.

[2] We affirm.

## Facts and Procedural History

[3] At approximately 8:00 p.m. on May 31, 2017, Indianapolis Metropolitan Police Department Officer William Wogan ("Officer Wogan") was on patrol in his district when he observed Smith driving a silver Chevrolet Monte Carlo. Smith "rolled" a stop sign and then turned right onto East Eleventh Street. Tr. p. 40. The officer followed Smith onto East Eleventh Street and observed that Smith failed to stop at the stop sign at the intersection of East Eleventh and LaSalle Street. Smith then proceeded northbound on LaSalle Street.

[4] As the officer turned northbound onto LaSalle, he saw Smith's vehicle "suddenly slow down [and] pull to the right." Tr. p. 44. The tires on the passenger side of the vehicle hit the curb, and the car jolted. *Id*. At that point, Officer Wogan activated his lights to initiate a traffic stop. While Smith's vehicle was stopped at the curb, the officer saw Smith moving around in the vehicle and shift from the middle of the front seat back to the driver's seat. Tr. pp. 44–45. The officer could not see the passenger side of Smith's vehicle because a parked car partially blocked the officer's view.

[5] Smith then pulled away from the curb and continued to drive northbound on LaSalle Street with Officer Wogan in pursuit with his lights activated. Officer Wogan radioed for assistance.

[6] Smith turned right onto Thirteenth Street and drove approximately one-half of the block before stopping his vehicle. Because Smith initially fled from him

before stopping, the officer considered the traffic stop high risk. The officer instructed Smith to turn his vehicle off, exit the vehicle, and walk back toward Officer Wogan. Smith complied with the officer's commands.

[7] Officer Wogan obtained Smith's name and date of birth and determined that Smith did not have a driver's license, active arrest warrants, or a handgun permit. Because Smith cooperated and Officer Wogan was "not tasked with traffic enforcement," the officer released Smith and instructed him that a licensed driver would need to pick up Smith and the car. Tr. pp. 48–49. Before Smith was allowed to return to the vehicle, Officer Brett Lorah ("Officer Lorah") made a quick sweep of the vehicle to check for weapons. Officer Lorah did not find any weapons but did notice that the front passenger window of the vehicle was in a lowered position.

[8] Because Smith's driving behavior had piqued Officer Wogan's curiosity, after the traffic stop was complete, Officer Wogan and Officer Lorah returned to the area on LaSalle Street where Smith had pulled his vehicle over to the curb just before Officer Wogan initiated the traffic stop. The officers stood on the sidewalk in front of 1213 LaSalle Street, an abandoned property, and saw a black and silver 9mm semi-automatic pistol laying in the grass approximately fifteen feet from the curb. Tr. p. 52. Just after locating the gun, the officers saw Smith driving his vehicle "backwards on Thirteenth Street." *Id.* Smith then stopped in the intersection, turned south on LaSalle Street, and drove by the officer. Smith and Officer Wogan made eye contact as Smith drove by. As Smith was driving without a license after being directed not to do so, Officer

Wogan instructed Officer Lorah to stop Smith, which he did just a few blocks away.

[9] Officer Wogan believed the pistol belonged to Smith and arrested him for carrying a handgun without a license. The officer recovered the pistol and observed scratches on the side of the pistol that had been laying on the freshly mown grass. The officer opined that the scratches looked "relatively fresh." Tr. p. 57. The officer believed that the markings and damage to the pistol "would be consistent with being thrown across concrete and on the ground." Tr. p. 59. And based on its appearance, the officer did not believe that the pistol had been exposed to the elements for any significant length of time.

[10] The State charged Smith with Level 4 felony unlawful possession of a firearm by a serious violent felon,[1] and a jury trial was held on January 23, 2018. At trial, Officer Wogan testified that due to his observations "that [he] had of the driving behavior and the movements of Mr. Smith, where we located the firearm and the fact that no one was around, we came to the conclusion that Mr. Smith had thrown the firearm out the window when he pulled over." Tr. p. 64.

[11] The jury found Smith guilty as charged. Smith waived his right to a jury trial on his status as a serious violent felon. The trial court found that Smith is a serious

---

[1] Smith was also charged with Class A misdemeanor driving while suspended, but that charge was dismissed one day before Smith's jury trial.

violent felon and entered judgment of conviction for Level 4 felony possession of a firearm by a serious violent felon. On February 22, 2018, the trial court ordered Smith to serve ten years, eight years executed in the Department of Correction and two years suspended to probation. Smith appeals his conviction.[2]

## Standard of Review

Our standard of review for claims of insufficient evidence is well settled: we neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Knight v. State*, 42 N.E.3d 990, 993 (Ind. Ct. App. 2015). We will not disturb the jury's verdict if substantial evidence of probative value supports it. *Id*. As an appellate court, we respect the jury's exclusive province to weigh conflicting evidence. *Id*.

## Discussion and Decision

Smith argues that the State failed to prove beyond a reasonable doubt that he "constructively possessed the handgun that police found abandoned on the front lawn of a vacant house." Appellant's Br. at 10. Indiana Code section 35-47-4-5(c) provides: "A serious violent felon who knowingly or intentionally

---

[2] We held oral argument in this case at North Newton High School in Morocco, Indiana, on October 23, 2018. We thank the school and its faculty, staff and students for their gracious hospitality. We also thank Newton Circuit Court Judge Jeryl Leach for sponsoring the oral argument. Finally, we commend counsel for the quality of their oral and written advocacy.

possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony." A conviction for possession of a firearm may rest upon proof of either actual or constructive possession. *See Houston v. State*, 997 N.E.2d 407, 409–10 (Ind. Ct. App. 2013).

[14] Actual possession is the direct physical control of the gun. *Bradshaw v. State*, 818 N.E.2d 59, 62 (Ind. Ct. App. 2004). In this case, there is no evidence that the officers saw the gun in Smith's possession.

[15] "Constructive possession occurs when somebody has the intent and capability to maintain dominion and control over the item." *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999). A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item, and (2) the intent to maintain dominion and control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011).

[16] "To prove capability, the State must show that the defendant is able to reduce the contraband to [his] personal possession." *K.F. v. State*, 961 N.E.2d 501, 510 (Ind. Ct. App. 2012), *trans. denied*. To prove intent, the State must establish the defendant's knowledge of the presence of the contraband. *Id*. When possession of the premises where the contraband is found is non-exclusive, the defendant's knowledge may not be inferred absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. *Gaynor v. State*, 914 N.E.2d 815, 819 (Ind. Ct. App. 2009), *trans. denied*. "Among the recognized 'additional circumstances' are: (1) incriminating statements by

the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant." *Id*. at 819–20 (quoting *Holmes v. State*, 785 N.E.2d 658, 660–61 (Ind. Ct. App. 2003)).

[17] It is well-settled that "conviction for possessory offenses does not depend on the accused being 'caught red-handed' in the act by the police." *Wilburn v. State*, 442 N.E.2d 1098, 1101 (Ind. 1982). Moreover, it is "not necessary that the evidence 'overcome every reasonable hypothesis of innocence.' The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citation omitted).

[18] Smith argues that the evidence is insufficient to support his conviction because Officer Wogan did not see a handgun in his possession, and he did not see Smith throw a handgun from his vehicle. Smith further argues that he did not make any incriminating statements to the officers, the handgun was found in a high crime area in the yard of an abandoned house, and the gun was not found within close proximity to him. Moreover, Smith argues that his flight from the police only establishes "consciousness of guilt of not having a valid driver's license." Appellant's Br. at 15.

[19] Officer Wogan found the handgun laying in the grass near to the area that Smith pulled over and hit the curb. While Smith was stopped at the curb, the officer saw Smith shift from the middle of the front seat back to the driver's

seat. Tr. pp. 44–45. Officer Wogan activated his lights to initiate a traffic stop, and Smith fled in his vehicle. Smith eventually stopped, and during the ensuing traffic stop, Officer Lorah observed that the passenger side window of the vehicle was lowered.

[20] After Officer Wogan returned to the area where Smith stopped his car and hit the curb, the officer found the handgun. Based on its appearance, the officer did not believe that the pistol had been exposed to the elements for any significant length of time. The officer recovered the pistol and observed scratches on the side of the pistol that had been laying on the freshly mown grass. He determined that the scratches looked "relatively fresh." Tr. p. 57. The officer believed that the markings and damage to the pistol "would be consistent with being thrown across concrete and on the ground." Tr. p. 59. The officer did not observe any other individuals in the area near the abandoned property either before or after the traffic stop.

[21] Finally, just after Officer Wogan found the handgun, the officer saw Smith driving his vehicle "backwards on Thirteenth Street." *Id.* at 52. Smith then stopped in the intersection, turned south on LaSalle Street, and drove by the officer. Smith and Officer Wogan made eye contact as Smith drove by.

[22] In *Brent v. State*, 957 N.E.2d 648, 652 (Ind. Ct. App. 2011), *trans. denied*, the defendant was a front seat passenger, rather than the driver. Police officers were investigating a possible illegal drug transaction and initiated a traffic stop. The vehicle did not stop initially but did briefly stop next to a parked vehicle. The

driver eventually stopped the vehicle, and during the traffic stop, the officers smelled fresh marijuana. The driver was arrested for resisting law enforcement, and the passenger, Brent, was removed from the car and handcuffed. When an officer returned to the area where the driver had briefly stopped the vehicle, he found a plastic baggie containing marijuana. Thereafter, Brent was charged with and convicted of possession of marijuana.

[23] On appeal, our court observed that Brent did not make incriminating statements, the marijuana was not found in close proximity to any items owned by him, and the driver's flight was beyond Brent's control. Brent did not flee or make any furtive gestures when the driver finally stopped the vehicle. Moreover, our court attributed any suspicion resulting from the suspect car stopping briefly so close to another vehicle to the driver, and not to Brent. Our court noted that the officer did not observe anything thrown out of the vehicle's passenger side window and did not testify that he observed "a throwing motion." *Id.* at 651.

[24] Finally, our court discussed the trial court's reliance on the fact that the marijuana was found where the vehicle had briefly stopped and agreed that it was not simply a coincidence that a baggie containing marijuana was found in that spot. However, we observed:

> We agree that the likelihood of a coincidence is low, and have searched for case law that explains when a coincidence is so unlikely that it leads to a reasonable inference that may support a conviction. "Coincidence" case law generally either looks inward to other factual circumstances to emphasize the unlikelihood of a

coincidence and that something more intentional must have occurred, or highlights the lack of additional evidence and concludes that without more, the evidence presented does not lead to any inferences.

Based on the evidence presented, we are inclined to follow the latter approach in this case. An officer[']s gut feeling and deduction based solely on the same do not amount to evidence that Brent possessed marijuana. The fact that Brent's driver momentarily stopped the suspect vehicle so that Brent, as the passenger, was sitting (inside the car) in the same spot where Officer Lushin later found the marijuana outside the car, would not lead a fact-finder to reasonably infer Brent's constructive possession of the marijuana.

*Id.* at 651–52.

[25] We reached the opposite result in *Womack v. State*, 738 N.E.2d 320 (Ind. Ct. App. 2000), *trans. denied*. In that case, Womack was approached by police investigating a domestic disturbance, and he fled on foot. While Womack was running, he reached into his pockets and made a motion as if throwing something. *Id*. at 322–23. Soon thereafter, the police searched the area where Womack made the throwing motion, and a baggie containing marijuana was found. Although it had been lightly snowing, the baggie was covered by droplets of water and was free of snow. *Id*. at 323. Our court affirmed Womack's conviction after concluding that the evidence was sufficient to support his conviction for marijuana possession. *Id*. at 324

[26] Here, Smith fled from the officer, there were no other individuals in the area, and the gun was found in front of an abandoned house. And like the marijuana

found in *Womack*, in this case the officer did not believe that the gun had been exposed to the elements for any significant length of time. The officer also observed that the grass in the yard where the gun was found had been freshly cut. Moreover, the gun bore scratch marks that were likely received when it clattered across the concrete. Importantly, shortly after the traffic stop concluded, Smith drove his vehicle without a license, in order to return to the area where the gun was located after he was instructed to have a licensed driver pick up his car.

[27] From these facts, a reasonable jury could find that Smith had intent to maintain dominion and control over the contraband, and therefore, that he constructively possessed the handgun at issue. For this reason, we affirm his conviction for Level 4 felony unlawful possession of a firearm by a serious violent felon.

[28] Affirmed.

Riley, J., and Tavitas, J., concur.