ATTORNEY FOR APPELLANT

Deborah K. Smith
Thorntown, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana



FILED

Sep 10 2020, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Robert L. McCoy,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 10, 2020

Court of Appeals Case No.
20A-CR-546

Appeal from the Boone Circuit
Court

The Honorable Lori N. Schein,
Judge

Trial Court Cause No.
06C01-1802-F4-401

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Robert L. McCoy (McCoy), appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Level 4 felony, Ind. Code § 35-47-4-5(c).

We affirm.

# ISSUE

McCoy presents this court with two issues, which we consolidate and restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his conviction for unlawful possession of a firearm by a serious violent felon.

# FACTS AND PROCEDURAL HISTORY

On February 11, 2018, Lebanon Police officers responded to a call about a suspicious individual at the Kroger grocery store in Lebanon, Indiana. At approximately the same time, Kroger's store manager, Bryan Brooks (Brooks), was called to the front of the store by another employee to address a distressed male who was being followed by other individuals. When the officers arrived, Officer Aaron Carlson (Officer Carlson) noticed a black male, later identified as McCoy, speaking on the phone at the north entrance of the store. After making eye contact, McCoy briefly entered the store.

When officers caught up with McCoy after he exited the store again, McCoy provided them with his name and date of birth and asked if they wanted to

search him. McCoy did not have any warrants, and he was not placed under arrest or searched. McCoy explained that his vehicle had broken down on the road next to a local Popeye's restaurant and he was looking for help. Officer Carlson became suspicious as he had passed that location on his way to Kroger and had not noticed a broken-down car. Officer Tyreese Griffin (Officer Griffin) walked with McCoy to the vehicle at Popeye's, which was running and had another individual in the driver seat. Officer Griffin briefly detained McCoy and the other individual based on the officer's suspicion of marijuana being in the vehicle. Finding no marijuana, Officer Griffin released both persons.

[6]     At some point while the officers were accompanying McCoy, a Kroger customer informed Brooks that there was a firearm in one of the black shopping baskets near the north entrance of the store. After investigation, Brooks found a black automatic handgun inside the basket—nothing else was in the basket. Brooks secured the firearm and asked another employee to notify the officers who were still on the premises. Brooks—without wearing gloves—carried the firearm to the parking lot, where the officers properly secured and packaged the firearm for evidence. The following day, Brooks provided the officers with surveillance video from the area where the firearm was located.

[7]     On February 20, 2018, the State filed an Information, charging McCoy with unlawful possession of a firearm by a serious violent felon, a Level 4 felony; and carrying a handgun without a license, a Level 5 felony. On January 29, 2020, following several continuances and withdrawals of counsel, the trial court

conducted a bench trial where McCoy proceeded *pro se*. During the trial, Officer Carlson testified that while watching the surveillance video of the area where the firearm was located, he noticed McCoy walk up to the shopping baskets, but was unable to distinguish what the object was in McCoy's hand. Officer Griffin informed the trial court that in the video he observed McCoy remove an object that he "believed to be a firearm" and place it in the Kroger shopping basket. (Transcript p. 85). During cross-examination of Detective Bryan Spencer (Detective Spencer), Detective Spencer testified that "based on the facts gathered during the examination," he was confident that the object McCoy "pulled from his waistband and placed in the basket was a firearm." (Tr. p. 117). Likewise, Brooks concurred that in "the video" he saw McCoy place a firearm in the shopping basket. (Tr. p. 70). At the conclusion of the trial, the State moved to dismiss the charge for carrying a handgun without a license. On February 2, 2020, the trial court found McCoy guilty of unlawful possession of a firearm by a serious violent felon. On February 26, 2020, the trial court sentenced McCoy to ten years executed, with two years suspended.

[8] McCoy now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

[9] McCoy contends that the State failed to present sufficient evidence beyond a reasonable doubt to support his conviction for unlawful possession of a firearm by a serious violent felon. Our standard of review with regards to sufficiency claims is well-settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses.

*Clemons v. State*, 987 N.E.2d 92, 95 (Ind. Ct. App. 2013). We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Circumstantial evidence alone is sufficient to support a conviction. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). Circumstantial evidence need not overcome every reasonable hypothesis of innocence. *See Clemons*, 987 N.E.2d at 95. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

[10] To convict McCoy of unlawful possession of a firearm by a serious violent felon, the State was required to establish that McCoy had been convicted of a serious violent felony in Indiana or in "any other jurisdiction in which the elements of the crime for which the conviction was entered are substantially similar to the elements of a serious violent felony" in Indiana, and that McCoy knowingly or intentionally possessed a firearm. I.C. §§ 35-47-4-5(a)(1);-(c). The statute enumerates several offenses that qualify as a serious violent felony, including robbery, in I.C. §§ 35-47-4-5(b)(13); 35-42-5-1. On appeal, McCoy challenges the State's evidence as to both his possession of the firearm and whether his out-of-state conviction had elements sufficiently similar to an Indiana serious felony charge. We analyze each of his claims in turn.

I. *Sufficiency of the Evidence*

[11] McCoy contends that the State failed to present sufficient evidence that he possessed the firearm. A conviction for unlawful possession of a firearm "may rest upon proof of actual or constructive possession." *Smith v. State*, 113 N.E.3d 1266, 1269 (Ind. Ct. App. 2018). Actual possession is "the direct physical control of the gun," whereas constructive possession occurs when the defendant "has (1) the capability to maintain dominion and control over the item, and (2) the intent to maintain dominion and control over it." *Id.* Although McCoy argued that the State could not establish that he constructively possessed the firearm, it should be noted that "it is well-settled that [a] conviction for possessory offenses does not depend on the accused being caught red-handed in the act by the police." *Id.* Moreover, it is "not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the" judgment. *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007).

[12] A review of the evidence reflects that sufficient evidence exists to support that McCoy had actual possession of the firearm which he abandoned in a shopping basket after the officers arrived at Kroger. At trial, Officer Carlson testified that after he made eye-contact with McCoy at Kroger, McCoy walked inside Kroger and shortly thereafter came back outside. When the officers confronted McCoy outside Kroger, he volunteered to be searched, an invitation which was declined by the officers. However, the surveillance video confirms that after McCoy walked inside Kroger, he placed a firearm in the black shopping basket. Brooks testified that the firearm was the only item in the basket when he

retrieved it to take it to the officers. Two other officers testified that the video clearly depicted McCoy removing the firearm from his waistband and placing it in the basket. McCoy's arguments that there is no DNA or fingerprint evidence linking him to the firearm and that "the video footage is the only evidence to support or not support the allegation that McCoy possessed a firearm and the witnesses . . . were divided in their observations" are improper requests for this court to reweigh the evidence and judge the credibility of the witnesses. (Appellant's Br. p. 27); *Smith v. State*, 8 N.E.3d 668, 679 (Ind. 2014); *see also Love v. State*, 73 N.E.3d 693, 700 (Ind. 2017) ("for video evidence, the same deference is given to the trial court as with other evidence, unless the video evidence at issue indisputably contradicts the trial court's findings.")

[13] Based on the evidence before us, we conclude that the State presented sufficient evidence which permitted a reasonable inference that McCoy exercised direct physical control over the firearm before he discarded it into the shopping basket to establish his actual possession. *See Womack v. State*, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000) ("The [S]tate was not required to show that Womack possessed the bag of marijuana at the time of Womack's apprehension, or at the time the officers discovered the bag."), *trans. denied*.

## II. *Out-of-State Conviction*

[14] McCoy also contends that the underlying conviction for armed robbery incurred in Michigan is not substantially similar to the serious violent felony of robbery in Indiana and therefore cannot be relied upon to support his serious

violent felon conviction. The determination of whether an out-of-state statute is substantially similar to an Indiana statute is a question for the trial court, not the jury, to decide. I.C. § 34-38-4-3. This court reviews the trial court's legal determination *de novo*. *Hollingsworth v. State*, 907 N.E.2d 1026, 1030 (Ind. Ct. App. 2009).

[15] "The elements of two statutes are substantially similar if they have common core characteristics that are largely, but not identically, alike in degree or extent." *State v. Hancock*, 65 N.E.3d 585, 587 (Ind. 2016). In evaluating these common core characteristics, "elements may be considered substantially similar with response to specific characteristics such as the underlying conduct sought to be regulated." *Id*. However, "an out-of-state statute is not substantially similar to an Indiana statute where the out-of-state statute is broader than the Indiana statute." *Id*.

[16] When McCoy was convicted of armed robbery in Michigan in 2007, the Michigan statute read as follows:

> A person who engages in conduct proscribed under [Mich. Comp. Laws § 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

Mich. Comp. Laws § 750.529.  The conduct proscribed under section 750.530 states:

> (1) A person who, in the course of committing a larceny of money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

[17]  The relevant Indiana robbery statute reads as follows:

> (a) Except as provided in subsection (b), a person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) By using or threatening the use of force on any person; or
>
> (2) By putting any person in fear;
>
> commits robbery, a Level 5 felony.  However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in serious bodily injury to any person other than a defendant.

I.C. § 35-42-5-1.

[18]  McCoy focuses the challenge to his conviction on the statutory definition of a weapon.  However, to define McCoy as a serious violent felon in Indiana, it is sufficient that he committed robbery—without the requirement of a weapon to be used.  Furthermore, a robbery conviction in Michigan includes unarmed

robbery as a necessarily lesser-included offense of armed robbery. *See People v. Reese*, 619 N.W.2d 708, 710 (Mich. Ct. App. 2000). Therefore, the more appropriate inquiry is to address the broader issue as to whether the Michigan and Indiana robbery statutes are substantially similar.

[19] Comparing both statutes, we note that both criminalize the act of intentionally taking property from another person or the presence of another person by force or fear. Under the Michigan statute, robbery is a specific intent crime which requires the defendant to act intentionally, whereas the Indiana statute requires the defendant to act intentionally or knowingly. *See People v. Harverson*, 804 N.W.2d 757, 761 (Mich. Ct. App. 2010). Both statutes require the taking from another person or from the presence of another person. Michigan's robbery statute requires a defendant to commit a larceny or a felonious taking of the property of another. *Id*. Indiana's statute is nearly identical as it mandates a defendant to "take[] property from another person or from the presence of another person." I.C. § 35-42-5-1(a). Finally, both statutes require the element of force or fear to be instilled in the victim by the defendant. Michigan's statute requires the State to establish that the defendant, in the course of committing larceny, "uses force or violence against any person who is present, or who assaults or puts the person in fear." Mich. Comp. Laws § 750.530. Similarly, Indiana mandates the State to prove that the property is taken "by using or threatening the use of force on any person; or by putting any person in fear." I.C. § 35-42-5-1(a). As the serious violent felon statute requires that the elements of the underlying crime be substantially similar, but not perfectly

congruent, we find the Michigan statute and Indiana statute satisfy this requirement with respect to robbery in the two jurisdictions.

[20] Even if we address McCoy's argument and analyze the definition of weapon, his claim—that the two statues are not substantially similar—is without merit. With respect to the definition of a weapon, both statutes focus less on the original purpose of an object used as a weapon, but more on the manner in which the defendant actually used the object. *Compare* I.C. § 35-31.5-2-86 and *Gleason v. State*, 965 N.E.2d 702, 708 (Ind. Ct. App. 2012) ("The question of whether a weapon is 'deadly' is determined from the description of the weapon, the manner of its use, and the circumstances of the case."), *with People v. Bosca*, 871 N.W.2d 307, 325 (Mich. Ct. App. 2015) (a dangerous weapon "can also be an instrumentality which, although not designed to be a dangerous weapon, is used as a weapon and, when so employed, is dangerous.") As such, the elements of the two statutes have core characteristics which are substantially similar and are alike in degree and extent. Accordingly, we affirm McCoy's conviction for unlawful possession of a handgun by a serious violent felon.

## CONCLUSION

[21] Based on the foregoing, we hold that the State presented sufficient evidence beyond a reasonable doubt to support McCoy's conviction for unlawful possession of a handgun by a serious violent felon.

[22] Affirmed.

[23] May, J. and Altice, J. concur