## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2020, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John M. Haecker
Squiller & Hamilton, LLP
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dakota G. Aikins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 23, 2020

Court of Appeals Case No.
20A-CR-782

Appeal from the
Dekalb Superior Court

The Honorable
Monte L. Brown, Judge

Trial Court Cause No.
17D02-1809-F4-16

**Kirsch, Judge.**

[1] Dakota G. Aikins ("Aikins") appeals his conviction for unlawful possession of firearm by serious violent felon.[1] He raises two issues on appeal, which we restate as follows:

> I. Whether the trial court abused its discretion in admitting evidence of previous instances when Aikins possessed a handgun; and

> II. Whether Aikins's conviction was supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] On September 1, 2018, several officers from the Garrett, Indiana police department were surveilling the home of Deborah Aikins ("Deborah"), Aikins's mother, before executing a search warrant at the home. *Tr. Vol. 2* at 51-52, 61-62, 102, 113. Officers believed Aikins lived at the residence. *Id*. at 99, 105-06. At 9:00 a.m., Officer Michael Shutt ("Officer Shutt") observed Aikins leave the home and walk to a nearby gas station while wearing a gray hat that had a black flat bill and a Chicago Bulls symbol on the front. *Id*. at 99-100. Several officers familiar with Aikins had often seen him wear such a hat. *Id*. at 64, 68-69, 79-80, 99-100, 116.

---

[1] *See* Ind. Code § 35-47-4-5.

[4]     Later that day while Officer Shutt met with the SWAT team to discuss executing the search warrant, Officer Nathan Cox ("Officer Cox") was assigned to watch the home. *Id*. at 52, 100-01. Officer Cox observed three individuals, including Aikins, enter the home. *Id*. at 52, 56-57. A short time later, Officer Cox saw Aikins leave the home. *Id*. at 53, 57. The SWAT team entered the home about thirty minutes after Aikins had departed. *Id*. at 54. Three individuals were found in the home: Deborah, Aikins's stepbrother Clifford Grim ("Grim"), and Grim's girlfriend, Tiffany Detar ("Detar"). *Id*. at 102, 114, 129, 136, 162. Aikins was not at the residence at the time of the search. *Id*. at 102-03.

[5]     Officer Shutt and other officers searched the home. *Id*. at 62. The home contained three bedrooms or sleeping areas, one downstairs and two upstairs. *Id*. at 63, 73, 131-32. Detar and Grim used the bedroom downstairs. Deborah used one of the upstairs bedrooms, and Aikins and his wife Rhonda Moore ("Dee Dee") used the other upstairs bedroom. *Id*. at 63, 73, 77, 129-32. In Aikins's bedroom officers observed on the bed a SCCY nine-millimeter handgun with a green frame and a silver side. *Id*. at 57, 64, 73, 119; *Ex. Vol.* at 8. Next to the handgun was Aikins's gray Chicago Bulls hat that Officer Shutt observed Aikins wearing earlier that day. *Tr. Vol. 2* at 64, 73-74, 103-04. Officers also found Aikins and Dee Dee's marriage license in a desk drawer in Aikins's bedroom. *Id*. at 65; *Ex. Vol.* at 9. In another part of the home, officers found a piece of mail addressed to Aikins that was written by Dee Dee while

she was incarcerated at the DeKalb County Jail. *Tr. Vol. 2* at 77-78, 83, 87, 104-05, 142; *Ex. Vol.* at 10.

[6] On September 10, 2018, Aikins was charged with unlawful possession of a firearm by a serious violent felon, a Level 4 felony. *Appellant's App. Vol. 2* at 15. The case was tried to a jury on December 16 and 17, 2019. *Id.* at 136-37. Melissa Chisholm ("Chisholm"), who said that Aikins was like a son to her, testified that she saw Aikins possess a handgun while he was at her home on August 10, 2018. *Tr. Vol. 2* at 92-94. Chisholm described that handgun as a semi-automatic handgun with green trim on the handle. *Id.* at 94-95. She testified that when she saw the gun, she yelled, "get that the fuck out of my house," and Aikins then "grabbed it, took it out the back door, came back in a couple, few minutes later without it." *Id.* at 95. Chisholm was unable to say for certain whether State's Exhibit 3, a picture of the handgun recovered from Aikins's bedroom, showed the same handgun she observed Aikins possessing on August 10, 2018. She testified that the handgun was the same type of handgun as in State's Exhibit 3, but that she remembered the gun that Aikins possessed on August 10, 2018, had more of an army green colored trim on the handle. *Id.* at 93-96; *Ex. Vol.* at 8.

[7] Detar testified that she had previously seen Aikins with State's Exhibit 8 -- the actual handgun recovered from the search -- more than once. *Tr. Vol. 2* at 133-35; *Ex. Vol.* at 13. Detar said she previously observed Aikins with the handgun at Deborah's home. *Tr. Vol. 2* at 134-35. Detar also identified the gray Chicago Bulls hat that was located next to the handgun in Aikins's bedroom as

belonging to Aikins. *Id*. at 132-33. While she acknowledged that both Aikins and Grim would wear Aikins's hat, she testified that Aikins would wear the hat more often than Grim did. *Id*. at 133. Detar stated that she thought she saw Aikins wearing the Chicago Bulls hat on the date the search warrant was executed. *Id*. at 137.

[8] The jury found Aikins guilty of unlawful possession of a firearm by a serious violent felon, a Level 4 felony. *Id*. at 219. On March 6, 2020, the trial court sentenced Aikins to eight years in Indiana Department of Correction. *Id.* at 232; *Appellant's App. Vol. 2* at 237-40. Aikins now appeals.

## Discussion and Decision

## I. Admission of Evidence

[9] Aikins argues that the trial court abused its discretion when it admitted the testimony of Chisholm and Detar about Aikins possessing a gun at an earlier date. More specifically, Aikins contends the probative value of Chisholm's and Detar's testimony was low or even non-existent and argues that the danger of unfair prejudice outweighed the probative value of their testimonies.[2]

---

[2] To the extent that Aikins argues that the admission of Chisholm's testimony and Detar's testimony was improper under Indiana Rule of Evidence 404(b), he has waived that issue. Aikins recites propositions of law applicable to that rule but then makes only a one-sentence argument: "The admission of Aikins's possession of a firearm on an occasion other than September 1, 2018 suggests that he committed another uncharged crime and permitted the jury to speculate that he possessed the firearm as charged on September 1, 2018." *Appellant's Br*. at 12. Thus, Aikins has waived this issue for lack of cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a); *Jarman v. State*, 114 N.E.3d 911, 915 n.2 (Ind. Ct. App. 2018), *trans. denied*.

[10]     Evidentiary rulings rest within the discretion of the trial court, and we review such rulings only for an abuse of discretion. *Griffith v. State*, 31 N.E.3d 965, 969 (Ind. 2015). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or the trial court has misapplied the law." *Jimerson v. State*, 56 N.E.3d 117, 120 (Ind. Ct. App. 2016), *trans. denied*. We may affirm an evidentiary ruling on any basis apparent in the record. *Craun v. State*, 762 N.E.2d 230, 236 (Ind. Ct. App. 2002), *trans. denied*.

[11]     Indiana Rule of Evidence 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." "Probative evidence" is evidence that is sufficient to establish a given fact and which, if uncontradicted, will remain sufficient. *Wigwam Holdings LLC v. Madison Cty. Assessor*, 125 N.E.3d 7, 12 (Ind. Tax Ct. 2019). "Probative value" refers to the degree that evidence carries a quality of proof to induce certainty. *Williamson Co. v. Review Bd. of Ind. Employment Sec. Div.*, 145 Ind. App. 266, 275, 250 N.E.2d 612, 617 (1969). Determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice is a task best performed by the trial court. *Ward v. State*, 138 N.E.3d 268, 273 (Ind. Ct. App. 2019). "Trial courts are given wide latitude in weighing the probative value of evidence against the prejudice

caused by its admission." *Wilcoxson v. State*, 132 N.E.3d 27, 31-32 (Ind. Ct. App. 2019), *trans. denied*. "While all relevant evidence is prejudicial in some sense, the question is not whether the evidence is prejudicial, but whether the evidence is unfairly prejudicial." *Ward*, 138 N.E.3d at 273.

[12] Aikins was charged under Indiana Code section 35-47-4-5(c), which provides: "A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony." The charging information alleged, in part, that Aikins "knowingly or intentionally possessed a firearm, which was a SCCY CPX-1, 9mm semi-automatic handgun (serial #270689)." *Appellant's App. Vol. 2* at 15. Furthermore, because the State's theory of the case was that Aikins had constructively possessed the handgun found in his bedroom, the State was also required to provide additional evidence of Aikins's intent and capability to maintain dominion and control over the handgun along with evidence that established Aikins's knowledge of the presence of the handgun in his bedroom. *Gray v. State*, 957 N.E.2d 171, 174-75 (Ind. 2011). Thus, the testimonies of Chisholm and Detar had probative value if their testimonies showed that Aikins had the capability to maintain exclusive dominion or control over the gun and intended to maintain control of the gun. *See Bradshaw v. State*, 818 N.E.2d 59, 62-63 (Ind. Ct. App. 2004).

[13] Before we address Aikins's claim on the merits, we observe that because he frames his argument within the context of Indiana Rule of Evidence 403, he must do more than contend and show that each woman's testimony was of little

or no probative value; he must contend and demonstrate that the "probative value [was] substantially outweighed by a danger of . . . unfair prejudice . . . ." Evid. R. 403. Other than self-serving statements that the testimonies created the danger of unfair prejudice, Aikins does not demonstrate such unfair prejudice and has waived this issue for lack of cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a); *Jarman v. State*, 114 N.E.3d 911, 915 n.2 (Ind. Ct. App. 2018), *trans. denied*. Nonetheless, waiver notwithstanding, we proceed to the merits of Aikins's argument.

[14] Aikins contends there was little or no probative value to either Chisholm's testimony or Detar's testimony that Aikins had previously possessed a gun because a person's "possession [of] the same instrumentality as that used in a crime has only the slightest tendency to support an inference that the person committed the crime. That is especially so where possession of the instrumentality is remote in time from the date the crime occurred." *Appellant's Br.* at 13 (quoting *Wilson v. State*, 770 N.E.2d 799, 802 (Ind. 2002) and *Pope v. State*, 737 N.E.2d 374, 378 (Ind. 2000)). As to Chisholm's testimony, Aikins correctly observes that when she saw Aikins possess a gun at her home, it was somewhat remote in time, approximately twenty days before police seized the handgun from Aikins's bedroom. *Tr. Vol. 2* at 96. Aikins is also correct that Chisholm was unsure if the photograph of the gun recovered from Aikins's bedroom which she was shown at trial was the same gun Aikins had possessed at her house twenty days earlier. *Id.* at 95. Aikins fails, however, to acknowledge that Chisholm testified that the guns were similar and that it was

possible that the gun she saw at her house and the photograph of the gun introduced as evidence at trial were the same gun. *Id*. at 94-96. *Ex. Vol.* at 8. Aikins also contends the probative value of Detar's testimony is low or nonexistent, even though Detar testified that she had seen the gun which was introduced at trial in Aikins's bedroom in Deborah's house and that she had actually seen Aikins possess that gun several times before. *Tr. Vol. 2* at 133-35. Aikins reasons that because Detar also testified that the gun was often "laying around," that either Aikins or Grim would have the gun, and because Grim was present at Deborah's home at the time of the search while Aikins was not, Detar's testimony about Aikins's prior possession of the gun had little or no probative value. *Id*. at 133-34, 137.

[15] Aikins contends that the link between the testimonies of Chisholm and Detar to Aikins's constructive possession of the handgun is weak in ways similar to the situations in *Pope* and *Wilson*, where the Indiana Supreme Court ruled that testimony regarding prior possession of an instrumentality of a crime was not even marginally relevant under Indiana Rule of Evidence 401, let alone probative under Indiana Rule of Evidence 403, because under the circumstances of those cases, there was no ability to compare the instrumentalities of the crimes admitted as evidence at trial with the potential instrumentalities of the crimes witnessed earlier. *Pope*, 737 N.E.2d at 378; *Wilson*, 770 N.E.2d at 802. For instance, in *Pope*, Pope's mother testified that ten days before the crime Aaron Thomas ("Thomas") was a passenger in her car and when Thomas exited her car, she noticed bullets where Thomas had

been sitting. *Pope*, 737 N.E.2d at 378. She retrieved the bullets but later threw them away. *Id*. During his mother's testimony, Pope tendered, as illustrative exhibits, bullets that allegedly looked like the bullets that Pope's mother had viewed in her car. *Id*. Pope's theory was that the bullets at the crime scene matched the bullets in his mother's car, and this proved that Thomas, not Pope, was the shooter. *Id*. The Indiana Supreme Court ruled that the bullets tendered as illustrative exhibits were not relevant and were inadmissible because there was no evidence that anyone had actually compared the bullets found at the crime scene with the bullets that Pope had tendered as illustrative exhibits, and there was no evidence that the bullets were the same or even similar. *Id*. Thus, there was no link between the bullets tendered at trial as illustrative exhibits and the actual bullets found at the crime scene. *Id*. at 379.

[16]   In *Wilson*, Wilson was charged with murder. 770 N.E.2d at 800. During the State's case in chief, the trial court admitted into evidence a photograph of Wilson brandishing a gun which was taken two months before the crime. *Id*. at 801-02. The State argued the photograph was relevant because the shell casings found at the crime scene were fired from a nine-millimeter gun similar to the kind of gun that Wilson was displaying in the photograph. *Id*. at 801. The State argued this made the photograph relevant because it tended to show that Wilson possessed the murder weapon at the time of the shooting. *Id*. at 801-02. On appeal, the Supreme Court ruled that the photograph was irrelevant and inadmissible because there was no weapon introduced into evidence at trial and there was no ability to compare the shell casings found at the scene with the

gun depicted in the photograph. *Id*. at 802. Thus, the Indiana Supreme Court ruled that the State had failed to establish a link between the gun in the photo and the shell casings at the scene. *Id*.

[17] Here, we reject Aikins's arguments that the testimonies of Chisholm and Detar lacked probative value and that the holdings of *Pope* and *Wilson* compel us to conclude that the trial court abused its discretion in allowing each woman to testify about Aikins's prior possession of a handgun. Chisholm testified that the gun which Aikins possessed at her house could have been the gun the State seized from Aikins's bedroom. *Tr. Vol. 2* at 92-96. Chisholm testified that the gun was on the arm of the love seat on which Aikins was sitting and that Aikins removed the gun from Chisholm's home upon her command. Thus, Chisholm's testimony was probative to Aikins's intent and capability to maintain control of the gun found in his bedroom. *Id*. Detar's testimony was probative for the same reasons; the fact that she saw Aikins possesses the same gun several times before the gun was found in Aikins's bedroom was probative of the State's assertion that Aikins had both the intent and capability to maintain control over the gun that was found in his bedroom. *Id*. at 133-35. Furthermore, because Detar testified that she had also seen Grim possess the gun – *id*. at 133 – the testimony of each woman that Aikins had previously possessed the gun was especially relevant and probative to the jury's determination of whether Aikins did, in fact, constructively possess the gun, or whether only Grim had possessed or constructively possessed the gun. Thus, the testimony of each woman was probative. The trial court did not abuse its

discretion in allowing each woman to testify that they had previously seen Aikins possess the gun.

[18] Furthermore, neither *Pope* nor *Wilson* sway our determination that the testimony of each woman was probative. The common thread running through both decisions is that there was no ability to compare the actual instrumentality of the crime and the possible instrumentality of the crime previously observed by witnesses. In *Pope*, no witness at trial even attempted to compare the bullets found at the crime scene with the bullets tendered at trial as illustrative exhibits, so there was no evidence the bullets were the same. *Pope*, 737 N.E.2d at 378-79. Likewise, in *Wilson*, because no murder weapon was entered into evidence, there was no ability to compare the shell casings found at the crime scene with the gun depicted in the photograph of Wilson. *Wilson*, 770 N.E.2d at 802.

[19] Here, because the gun the police seized from Aikins's bedroom was admitted as evidence at trial, both Chisholm and Detar were able to compare that gun to the gun that each had previously observed Aikins possess. *Tr. Vol. 2* at 94-96, 133-35. As a result, the testimony of each woman was probative and highly relevant to the State's constructive possession theory assertion that Aikins had both the intent and capability to maintain control over the gun. Accordingly,

the trial court did not abuse its discretion when it allowed Chisholm and Detar to each testify about a gun that they had previously seen Aikins possess.[3]

## II. Sufficiency of Evidence

[20] Aikins also claims the evidence submitted at trial was insufficient to support his conviction for unlawful possession of firearm by a serious violent felon. Specifically, he argues the State failed to present sufficient evidence that he constructively possessed the gun seized from his bedroom.

[21] When we review the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Rather, we will affirm a conviction if we find that any reasonable factfinder could find a defendant guilty beyond a reasonable doubt when considering all the facts and inferences that favor the conviction. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). The evidence need not exclude every

---

[3] We acknowledge that in 2018, another panel of this court addressed whether testimony that a victim had previously observed the defendant with a gun was relevant, and, if it was, whether the probative value of that testimony was outweighed by the danger of unfair prejudice. *See Smith v. State*, 116 N.E.3d 1107 (Ind. Ct. App. 2018), *trans. denied*, *cert. denied*, 140 S. Ct. 940 (2020). In *Smith*, the defendant was convicted of, inter alia, carrying a handgun without a license. *Id.* at 1110. At trial, the victim was allowed to testify that he had previously observed the defendant possess a pink handgun. *Id.* at 1115. The gun that was seized and formed the basis of the defendant's charge was black. *Id.* at 1116. Analyzing the issue under Indiana Rule of Evidence Rule 403, the panel held that testimony about the defendant's possession of the pink handgun was impermissible testimony about a prior bad act. *Id.* However, as noted above, Aikins presents no cogent argument that the probative value of the testimony of Chisholm and the testimony of Detar was outweighed by the danger of unfair prejudice. He merely argues that the testimony of each woman had little or no probative value. Finally, while the two guns in *Smith* were markedly different in appearance – one was pink and the other one was black – in this case the descriptions of the guns previously observed were either similar (Chisholm) or identical (Detar) to the gun actually admitted as evidence at trial. *See Tr. Vol. 2* at 93-96, 133-35. Thus, the probative of the testimony here was much greater than the probative value of the testimony in *Smith*.

reasonable hypothesis of innocence, but it must support a reasonable inference of guilt to support the verdict. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[22] To convict Aikins of unlawful possession of a firearm by a serious violent felon, the State was required to prove that Aikins had been convicted of a serious violent felony in Indiana and that he knowingly or intentionally possessed a firearm. Ind. Code § 35-47-4-5. On appeal, Aikins's sole contention is that the State failed to prove that he constructively possessed the handgun found in his bedroom. "[A] conviction for a possessory offense does not depend on catching a defendant red-handed." *Gray*, 957 N.E.2d at 174. A conviction for unlawful possession of a firearm "may rest upon proof of either actual or constructive possession." *Smith v. State*, 113 N.E.3d 1266, 1269 (Ind. Ct. App. 2018), *trans. denied*. Actual possession is "the direct physical control of the gun." *Id.* at 1270. Constructive possession occurs when the defendant has both "(1) the capability to maintain dominion and control over the item, and (2) the intent to maintain dominion and control over it." *Id.* To prove constructive possession, the State must support a defendant's intent to maintain dominion and control over the contraband with additional evidence pointing to the defendant's knowledge of the presence of the contraband and its nature. *Gray*, 957 N.E.2d at 174-75. We traditionally look to several additional items of evidence to assess a defendant's knowledge and intent, including (1) incriminating statements by the defendant; (2) a defendant's furtive gestures or attempts to flee; (3) the location of the contraband in settings suggesting manufacturing; (4) the contraband's proximity to the defendant; (5) the location of the contraband within the defendant's plain

view; and (6) the mingling of the contraband with other items the defendant owns. *Id.* at 175. This list, however, is not exhaustive. *Johnson, v. State*, 59 N.E.3d 1071, 1074 (Ind. Ct. App. 2016). "Rather, the State is required to show that whatever factor or set of factors it relies upon in support of the intent prong of constructive possession, those factors or set of factors must demonstrate the probability that the defendant was aware of the presence of the contraband and its illegal character." *Gee v. State*, 810 N.E.2d 338, 344 (Ind. 2004).

[23] Here, the State presented sufficient evidence of Aikins's intent to maintain dominion and control over the handgun based on the evidence showing his knowledge of the nature and presence of the handgun. First, the evidence established that Aikins resided at Deborah's home and that the handgun was found in Aikins's bedroom. *Tr. Vol. 2* at 129-32. Officers located a letter at Deborah's home that was addressed to Aikins and sent to him by Dee Dee while she was incarcerated in the DeKalb County Jail. *Id.* at 78, 83, 87, 142; *Ex. Vol.* at 10. Contrary to Aikins's argument, the fact that several people lived in Deborah's home and that Grim may have also possessed the handgun at some point does not negate the sufficiency of the State's proof that Aikins constructively possessed the handgun. These were evidentiary matters for the jury to weigh.

[24] The State presented evidence of other additional circumstances that supported the finding that Aikins had the intent and capability to maintain dominion and control over the gun. First, Chisholm testified that she saw Aikins previously possess a gun that could have been the same gun admitted into evidence at trial,

and Detar testified that she had previously observed Aikins carrying the same handgun several times. *Tr. Vol. 2* at 92-96, 133-35; *Ex. Vol.* at 13. Second, the specific location of the handgun was additional evidence pointing to Aikins's knowledge of the presence of the handgun in his bedroom. The handgun was located in plain view on Aikins's bed. *Tr. Vol. 2* at 64, 73, 119; *Ex. Vol.* at 7-8. In that same room, police also found Aikins's marriage license and gray Chicago Bulls hat, which officers had observed Aikins wear that same day. *Tr. Vol. 2* at 64-65, 73-76, 103-04; *Ex. Vol.* at 8-9. Accordingly, the State presented sufficient evidence that Aikins constructively possessed the gun and thus presented sufficient evidence to support Aikins's conviction for unlawful possession of firearm by a serious violent felon.

[25] Affirmed.

Pyle, J., and Tavitas, J., concur.